**UNITED STATES of America,**
**Plaintiff-Appellant,**

**v.**

**James L. KINGTON and Don Earney,**
**Defendants-Appellees.**

**No. 85–1743.**

United States Court of Appeals, Fifth Circuit.

Oct. 3, 1986.

Rehearing and Rehearing En Banc Denied Nov. 12, 1986.

Patty Merkamp Stemler, Atty., Appellate Section, Crim. Div., Washington, D.C., Marvin Collins, U.S. Atty., William F. Alexander, Asst. U.S. Atty., Dallas, Tex., Kathleen A. Felton, Atty., Appellate Section, Crim. Div., Washington, D.C., for plaintiff-appellant.

Ben L. Krage, Kasmir, Willingham & Krage, Dallas, Tex., for Kington.

Jack Bryant, Tom M. Richards, Abilene, Tex., for Earney.

Before REAVLEY and POLITZ, Circuit Judges, and ROBINSON *, District Judge.

REAVLEY, Circuit Judge:

The district court has suppressed bank records on the ground that the government violated the Right to Financial Privacy Act, 12 U.S.C. §§ 3401–3422. The ruling was made after selection and swearing of the jury, the defendants having waived their right to object on double jeopardy grounds to a new trial. We hold that the government is entitled to appeal the court's ruling, and we reverse the ruling as an unwarranted sanction against the handling of the bank records.

*Facts*

Defendants were formerly president and vice president of now defunct Abilene National Bank. They were charged on numerous counts, including embezzlement, falsifying a loan application, causing a bank to fail to report a currency transaction over $10,000, and filing a false income tax return. Prior to indictment, a grand jury issued a subpoena for relevant bank records to Abilene National Bank. The bank delivered these records to FBI and IRS agents, not to the grand jury. The agents kept the records and prepared summaries of them for the grand jury.

Defendants filed a pretrial motion to suppress the records on the ground that failure of the grand jury to actually receive

---

* District Judge of the Northern District of Texas, sitting by designation.

them violates the Right to Financial Privacy Act, 12 U.S.C. §§ 3401–3422. The district court conducted a hearing on the motion and granted it, but only after the jury had been selected and sworn. After the hearing, the court discharged the jury, and three weeks later formally entered the suppression order from which the government appeals.

On appeal, the government argues that the bank records should not be suppressed. In addition to countering this contention, defendants Kington and Earney move to dismiss the appeal on the ground that this court lacks jurisdiction over the case.

## Discussion

### Jurisdiction

In arguing that this court lacks jurisdiction over the instant appeal, appellees rely on the wording of 18 U.S.C. § 3731, which provides:

An appeal by the United States shall lie to a court of appeals from a decision or order of a district courts [*sic*] suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

It is settled law that "[i]n the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn." *Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975). In the instant case, the jury was empaneled and sworn, but there was no verdict or finding on the indictment. Thus, argue the appellees, the United States appeals from a decision or order made "after the defendant has been put in jeopardy and before the verdict or finding," which is statutorily forbidden.

The interpretation of § 3731 need not be so mechanical. In *United States v. Harshaw*, 705 F.2d 317, 319 (8th Cir.1983), the Eighth Circuit held that Congress "intended the phrase 'after a defendant is put in jeopardy and before a verdict or finding on an indictment or information' to represent the start and finish of an ongoing trial." What the statute forbids is the interruption of trial, an appeal by the United States from a suppression order during an ongoing trial. In the instant case, the government appeals from the district court's suppression order that was entered three weeks after the district court had ended the trial by discharging the jury.

■ We agree with the *Harshaw* court, which stated:

We conclude that § 3731 places only two limitations on the government's ability to appeal suppression orders in criminal cases. First, no government appeal may lie if the defendant's rights under the double jeopardy clause would be violated should the government prevail in its appeal. Second, no government appeal may lie if the appeal would interrupt an ongoing trial.

*Id.* at 319 (citations omitted). Neither of the two limitations apply in the instant case.

■ The defendants have expressly waived double jeopardy objections to retrial should the government prevail in its appeal. But they claim that the second *Harshaw* limitation is applicable; they argue that the government's decision to appeal clearly interrupted an ongoing trial. Appellees would have us believe that the trial judge granted the suppression motion and then the United States interrupted the proceedings by bringing an appeal. This apparently was indeed the fact situation in *United States v. Payner*, 572 F.2d 144 (6th Cir.1978), in which the court held that an appeal was forbidden under § 3731.

In the instant case, however, the judge empaneled the jury and then conducted a hearing on defendants' motion to suppress out of the presence of the jury. In considering the motion, the judge apparently decided to strike a compromise: he would terminate the trial and grant the motion on condition that the defendants waived any

claim of double jeopardy in the event his ruling was reversed on appeal by the government. Although the judge and all parties contemplated that the government would appeal, the government did not initiate the compromise which resulted in the discharge of the jury. It was the judge who waited until after trial had commenced to rule on the government's pretrial motion, and it was the judge who discharged the jury after obtaining the waiver of jeopardy to permit the government's appeal.

The government appeals from an order entered after the termination of the trial, and it did not interrupt an ongoing trial in making its appeal. We conclude that the government did not appeal from a ruling made "after the defendant was put in jeopardy and before the verdict" within the meaning of § 3731, and the appeal is therefore authorized.

*Suppression*

## I.

The district court based its decision to suppress the bank records on the Right to Financial Privacy Act, 12 U.S.C. §§ 3401–3422. Section 3420 specifically applies to grand jury subpoenas, and it provides:

> Financial records about a customer obtained from a financial institution pursuant to a subpena issued under the authority of a Federal grand jury—
>
> (1) shall be returned and actually presented to the grand jury;
>
> (2) shall be used only for the purpose of considering whether to issue an indictment or presentment by that grand jury, or of prosecuting a crime for which that indictment or presentment is issued, or for a purpose authorized by rule 6(e) of the Federal Rules of Criminal Procedure;
>
> (3) shall be destroyed or returned to the financial institution if not used for one of the purposes specified in paragraph (2); and
>
> (4) shall not be maintained, or a description of the contents of such records shall not be maintained by any Government authority other than in the sealed records of the grand jury, unless such record has been used in the prosecution of a crime for which the grand jury issued an indictment or presentment or for a purpose authorized by rule 6(e) of the Federal Rules of Criminal Procedure.

The subpoenaed bank records in the instant case were delivered to IRS and FBI agents, and were never "actually presented" to the grand jury. In support of its suppression ruling, the court cites *In re Castiglione*, 587 F.Supp. 1210 (E.D.Ca. 1984), which held that under § 3420 subpoenaed documents must be delivered by the bank or one of its officers or agents to the grand jury, and that it is improper for government agents to make the delivery. The district court indicates its belief that the holding in *Castiglione* supports its order to suppress the evidence. But in *Castiglione* the court in fact did not order suppression of the evidence as a remedy for the violation it perceived. Rather, the court there quashed "all existing subpoenas," and ordered that "[n]ew subpoenas may be issued by the grand jury ... directing the custodian of records of such institutions to personally appear and deliver such records into the Grand Jury's custody." *Castiglione* at 1215.

■ More important, however, is our skepticism concerning the violation perceived to exist by *Castiglione*. The court there interprets the phrase 'actually presented to the grand jury,' appearing in § 3420(1), as meaning 'actually presented by a bank official.' But nothing in the language or legislative history of the statute dictates who is to do the presenting or delivering. The statute merely affirms that the grand jury must actually be presented with the documents; it does not state by whom. We hold, contra *Castiglione*, that it is not necessary for financial institutions to comply with subpoenas under § 3420 by bank officials themselves delivering the requested records.

## II.

Appellees claim that suppression is appropriate in this case because the failure of the grand jury to receive the bank records,

rather than mere summaries, violates their right to be indicted by a grand jury under the Fifth Amendment to the Constitution. They also claim a violation of their right to privacy under the Fourth Amendment. We reject both of these contentions.

## A.

In *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), three internal revenue agents had been the only witnesses who appeared before the grand jury that delivered a tax fraud indictment against Costello. They delivered to the grand jury summaries of the documentary evidence. Costello "moved to dismiss the indictment on the ground that the only evidence before the grand jury was 'hearsay,'" and hence that it violates the Fifth Amendment requirement of presentment or indictment by a grand jury. *Id.* at 361, 76 S.Ct. at 407. The Court rejected this claim, however, holding that "neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act." *Id.* at 362, 76 S.Ct. at 408.

Similarly, in *United States v. Brown,* 574 F.2d 1274 (5th Cir.1978), we rejected a defendant's contention that it was improper for the grand jury to hear only an agent's oral summaries of evidence presented to a prior grand jury. "A defendant has no right to require that the Government present all available evidence at this proceeding." *Id.* at 1275. The holdings of *Costello* and *Brown* are dispositive of appellees' Fifth Amendment contention.

## B.

Appellees also claim that suppression is justified because the government's failure to comply with § 3420(1) constitutes a violation of their Fourth Amendment right to be free from unreasonable searches and seizures.

In *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), the Court held that bank customers have no legitimate Fourth Amendment expectation of privacy in the records of their accounts maintained by banks. The Right to Financial Privacy Act "is a congressional response" to this holding, for "it is clear that Congress may provide protection of individual rights beyond that afforded in the Constitution. H.Rep. No. 1383, 95th Cong., 2nd Sess. 7, *reprinted in* 1978 U.S. Code Cong. & Ad.News 9273, 9306.

While it is evident that Congress has expanded individuals' right to privacy in bank records of their accounts, appellees are mistaken in their contention that the expansion is of constitutional dimensions. The rights created by Congress are statutory, not constitutional.

Thus, we must look to the Right to Financial Privacy Act itself to assess appellees' contentions. When we do so, however, we find that suppression of the evidence is nowhere mentioned as a remedy for violation of the Act. Congress was surely cognizant that in *Miller* the Court denied suppression as a remedy for a purported Fourth Amendment violation. Its failure to change the effect of *Miller* is strong evidence that Congress did not intend such a remedy. As the court said in *United States v. Frazin,* 780 F.2d 1461, 1466 (9th Cir.1986), "[h]ad Congress intended to authorize a suppression remedy, it surely would have included it among the remedies it expressly authorized."

Since there was no constitutional violation here, and Congress apparently did not intend suppression as a remedy for violation of 18 U.S.C. § 3420, we conclude that suppression is inappropriate.[1]

The effect of § 3420 is to bring records subpoenaed by the grand jury under the secrecy safeguards and restrictions of grand jury proceedings generally. Representative Mattox, in proposing an amend-

---

1. The Supreme Court has expressly rejected the idea that "a federal court should use its supervisory power to suppress evidence tainted by [even] gross illegalities that did not infringe defendant's constitutional rights." *United States v. Payner,* 447 U.S. 727, 734, 100 S.Ct. 2439, 2445, 65 L.Ed.2d 468 (1980).

ment to the Right to Financial Privacy Act that eventually became § 3420, stated, "my amendment would stop the wholesale transfers of information between Government agency personnel by requiring that all transfers be limited to those which are allowed under rule 6(e) of the rules of criminal procedure." 124 Cong.Rec. 33829, 33842 (1978).

We therefore conclude that the government did violate § 3420(1) in failing to transfer control over the records to the grand jury. The question remains whether a penalty for this violation is available. Statutory penalties are provided by the Right to Financial Privacy Act, 12 U.S.C. §§ 3417–3418, but it appears that these sections are inapplicable "to any subpena or court order issued in connection with proceedings before a grand jury." 12 U.S.C. § 3413(i).

Appellees insist that suppression is the only available remedy in this case, and that if the evidence is not suppressed this will encourage future violations of § 3420. Federal Rule of Criminal Procedure 6(e)(2) provides that "[a] knowing violation of Rule 6 may be punished as a contempt of court." If the effect of § 3420 is to bring records subpoenaed by the grand jury under the safeguards of grand jury proceedings generally, a violation of § 3420 should be subject to the same penalties as are other violations of Rule 6.

### III.

▮ To recapitulate, we hold:

1. Defendants have shown no Fourth Amendment or Fifth Amendment infringement.

2. Under § 3420 a grand jury subpoena may be served, and financial records obtained, by any officer authorized by the grand jury to do so. The officer takes custody of the records for the grand jury and subject to its control and direction. No examination of the records may be made except for the purposes of, and by direction of, the grand jury. They are thereafter to be maintained as sealed records of the grand jury pursuant to § 3420(2), (3) and (4) and to Rule 6(e) of the Federal Rules of Criminal Procedure.

3. A breach of the above stated restrictions does not warrant the suppression of the records. Where there is a breach of the obligation of secrecy, the court's power to punish for contempt is an adequate sanction and the one contemplated by Congress in its enactment of § 3420. It is unnecessary for us to decide here whether the civil penalties of § 3417 may be recoverable for abuses of § 3420.

REVERSED AND REMANDED.