**The UNITED STATES of America**

v.

**James L. KINGTON, and Don Earney.**

**No. CR 1–85–001–R.**

United States District Court,
N.D. Texas,
Dallas Division.

Oct. 28, 1988.

Amended June 9, 1989.

Mike Worley, Asst. U.S. Atty., Dallas, Tex., for plaintiff.

Ben L. Krage, Kasmir and Krage, Dallas, Tex., for Kington.

Jack Bryant, Abilene, Tex., for Earney.

## AMENDED MEMORANDUM OPINION

BUCHMEYER, District Judge.

This criminal case has already made two appearances before the Fifth Circuit.[1] It will now make a third trip, because this opinion addresses an issue of first impression in this Circuit: *the consequences of a defendant's waiver of rights under the Speedy Trial Act.*[2]

Here, both defendants, James Kington and Don Earney, filed waivers of the Speedy Trial Act. However, they now argue that these "purported" waivers were "inoperative"—because a defendant cannot waive the requirements of the Act—and, therefore, they claim that their convictions must be set aside.

This opinion concludes that there were no violations of the Speedy Trial Act in this case. Specifically, it holds:

(i) that a defendant may not waive the time limitations of the Speedy Trial Act;

(ii) but that a defendant who fails to retract a waiver and move for dismissal before trial does, in fact, waive the right to have the case dismissed for violations of the Act;[3]

(iii) and that, if the waiver filed by a defendant causes a delay in the trial of the case, then the period of this delay is excludable time under the Speedy Trial Act.[4]

Consequently, the defendants' motions to dismiss the indictment and set aside their convictions will be denied.

This opinion will first outline the procedural background concerning the defendants' Speedy Trial Act claims; it will then summarize the applicable law; and, it will conclude with a discussion of the reasons why there were no violations of the Act in this case.

## A. THE PROCEDURAL HISTORY

There are five distinct periods that must be considered in connection with the issues raised by the defendants under the Speedy Trial Act. These are the facts concerning each period.

1. *The First Trial: Feb. 19, 1985–Nov. 21, 1985*

On February 19, 1985, a 52-count indictment was returned in the Abilene Division of this District; it charged the defendants Don Earney and James Kington, the former President and Vice-President of Abilene National Bank,[5] with embezzling and misapplying bank funds,[6] with making false entries on bank records,[7] and with causing the bank to fail to file currency transaction reports.[8] In addition, Kington was charged with making a false declara-

1. *United States v. Kington*, 801 F.2d 733 (5th Cir.1986), cert. denied, 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 495 (1987) ("*Kington I*"); *United States v. Kington*, 835 F.2d 106 (5th Cir.1988) ("*Kington II*").

2. 18 U.S.C. §§ 3161–3174.

3. 18 U.S.C. § 3162(a)(2).

4. See *United States v. Pringle*, 751 F.2d 419, 433–35 (1st Cir.1984).

5. Testimony at trial established that the original name of this financial institution was "*A Bank Named Abilene.*"

6. See 18 U.S.C. § 656.

7. See 18 U.S.C. § 1005.

8. See 31 U.S.C. §§ 1059 and 1081.

tion on an income tax return.[9] The defendants' first appearance before a magistrate was on the day following the indictment, February 20, 1985.

On March 5, 1985, the defendants were formally arraigned before Judge Halbert O. Woodward. At this time, both defendants orally waived their rights under the Speedy Trial Act, and the case was set for trial on August 5, 1985. Written waivers of the Act were filed by Earney on March 11 and by Kington on March 15, 1985. On July 23, 1985, Judge Woodward entered *an agreed order* resetting the trial for October 21, 1985.[10]

On October 21, 1985, the first trial began. After voir dire, the jury was selected and sworn. Then Judge Woodward excused the jury and, from October 21 through October 23, he heard arguments and evidence on various motions, including the defendants' Motion to Suppress almost all of the government's exhibits—bank records that had been subpoenaed by the grand jury, but delivered only "to the FBI and IRS agents, not to the grand jury." [11] Judge Woodward granted this motion to suppress on October 23—on the grounds that the grand jury should have received the actual bank records, not "mere summaries" from the government agents—and he then discharged the jury. On November 15, 1985, Judge Woodward entered the suppression order and a Memorandum Opinion explaining his decision.

*At no time before the first trial began did the defendants retract their waivers of the Speedy Trial Act. And, neither defendant moved for dismissal prior to trial* because of violations of the Act. 18 U.S.C. § 3162(a)(2).

## 2. *The Kington I Appeal: Nov. 22, 1985–Nov. 24, 1986*

On November 22, 1985, the government filed its notice of appeal from the suppression order. On October 3, 1986, the Fifth Circuit issued its opinion reversing Judge Woodward's decision, and remanding the case for trial. *Kington I,* 801 F.2d 733. Petitions for rehearing were denied on November 12, 1986. The Fifth Circuit mandate was issued on November 24, and was received and filed by the District Clerk on December 2, 1986.

After an unsuccessful motion to stay the Fifth Circuit mandate, the defendants filed a petition for writ of certiorari in the Supreme Court on January 9, 1987. Certiorari was denied on April 20, 1987.

## 3. *The Next Trial Setting: Nov. 25, 1986–May 7, 1987*

By agreement with Judge Woodward, the case was transferred to this Court on December 17, 1986, some three weeks after the Fifth Circuit mandate had issued in *Kington I.* The case was immediately set for trial on March 2, 1987.

*The defendants objected to this trial date.* On February 3, 1987, they filed a "Motion for Stay or Continuance of Proceedings." This motion was based upon their "good faith, well-founded belief that the Supreme Court is likely to grant the Writ of Certiorari" filed in *Kington I* on January 9, 1987. In addition, the motion stated:

> The defendants have heretofore waived their rights to a speedy trial and will upon the consideration of this Motion by the Court further waive their rights to a speedy trial.

Over the objection of the government, this Court granted the defendant's motion for continuance and, on February 9, reset the case for trial on June 1, 1987.

On February 3, 1987, the defendants also

---

**9.** See 26 U.S.C. § 7206.

**10.** *This trial date was some ten months after the defendants' first appearance.* 18 U.S.C.A. § 3161(c)(2). However, neither defendant objected—presumably because the case was complex and because the defense of the charges in the 52-count indictment required substantial

preparation, including the examination of voluminous bank records. These records were, in fact, the subject of the appeal in *Kington I.*

**11.** See *Kington I,* 801 F.2d 733, and Judge Woodward's Memorandum Opinion of November 15, 1985.

filed various other motions [12]—including a motion to dismiss on double jeopardy grounds. After certiorari was denied in *Kington I* (April 20, 1987), this Court entered an opinion denying the double jeopardy motion. On May 8, 1987, the defendants filed their notice of interlocutory appeal—so the case was not tried, as scheduled, on June 1, 1987.

*At no time during this period did the defendants retract their waivers of the Speedy Trial Act;* in fact, if they had done so, this Court would have promptly tried the case. Moreover, *neither defendant filed a motion for dismissal of the case because of alleged violations of the Speedy Trial Act*—even though all pretrial motions had to be filed by April 10, 1987.[13] See 18 U.S.C. § 3162(a)(2).

### 4. *The Kington II Appeal: May 8, 1987 —January 29, 1988*

The interlocutory appeal in *Kington II* lasted from May 8, 1987 until January of 1988. On January 6, 1988, the Fifth Circuit issued its opinion affirming the denial of the defendant's double jeopardy motion, and—*once again*—remanded the case for a new trial. *Kington II*, 835 F.2d 106. On January 29, 1988, the mandate of the Fifth Circuit was issued; and, on February 1, it was received and filed with the District Clerk.

### 5. *The Second Trial: Jan. 30, 1988– April 5, 1988*

On February 4, 1988, before a new trial date had been set, the government filed a "Motion to Extend Time for Trial." This motion contended that the defendants' interlocutory appeal in *Kington II* had made it impractical to retry the case within 70 days of the "November 1985 mistrial" which resulted when Judge Woodward had sustained the defendants' motion to suppress at the first trial. The government, accordingly, requested this Court to extend the period for retrial to 180 days under 18 U.S.C. § 3161(e).

On February 9, 1988, Earney objected to the government's motion to extend time—stating, *for the first time,* that he "does not waive any rights" under the Speedy Trial Act. On February 16, 1988, Kington also objected to the government's motion; he requested a trial "at this Court's earliest convenience"—and, *also for the first time,* raised Speedy Trial Act objections:

> Defendant Kington believes that his speedy trial rights have already been violated by the government and would object to any further extensions of time for the government to try this case.

Kington's February 16, 1988 response by Kington also indicated that there was still a pending motion for acquittal which had been filed on February 3, 1987, but which had not been ruled on by this Court; it states:

> The government asserts that on May 1, 1987, the Court denied the defendants' motion for acquittal. This is not the case at all. The Court denied the defendants' motion to dismiss the indictment on double jeopardy grounds. Untreated and unreached *and still pending is the defendants' motion for acquittal resulting from the Court's discharge of the jury in October, 1985* to assist the government in appealing the Court's then adverse ruling. While the Court of

---

**12.** The defendants contend that these nine motions were not filed until February 6, 1987 because—although they were mailed on February 3—they were not received by the office of the District Clerk in Abilene until February 6, 1987. However, it is this Court's recollection that *the motions were delivered to this Court and to the District Clerk's Office in Dallas on February 3, 1987—and this Court's courtroom deputy (an employee of the District Clerk's Office) filed them and stamped the February 3, 1987 filing date on the motions.* The defendants disagree; Kington's attorney is convinced that the motions were not delivered to this Court until February

6 (a Monday), and that the courtroom deputy stamped them without remembering to change his file stamp from February 3 (the preceding Friday). However, *this dispute is academic—because there is no disagreement that, on February 3, 1987, Kington's attorney did deliver a letter-motion to this Court which "caused the time under the Speedy Trial Act to stop on february 3, 1987."*

**13.** See the Order of February 9, 1987 granting the defendants' motion for continuance and the attached Pretrial Order.

Appeals has held that with respect to double jeopardy arising as the result of a second trial the defendants had waived their rights to claim double jeopardy, unmentioned is whether or not the defendant are entitled to be acquitted as a result of the Court's prior dismissal of the jury in this case. (Emphasis added).

Without expressly ruling on the government's "Motion to Extend Time for Trial" (see note 39), by order dated February 19, 1988, this Court set the case for trial on April 5, 1988. *This trial date certainly met the requirements of the Speedy Trial Act because it was within 70 days from the issuance of the mandate in Kington II.* Nevertheless, on March 11, 1988—after one trial and two Fifth Circuit appeals—the defendants, for the very first time, moved to dismiss this case because of alleged violations of the Speedy Trial Act which took place before the *Kington II* appeal.

On Monday, April 4, 1988, this Court held hearings, heard arguments and made rulings on all pending motions, including other motions which had been filed by the defendants on March 11, 1988. On Tuesday, April 5, 1988, the jury was selected and the presentation of evidence began. On April 13, 1988, the jury returned its verdict, finding Kington guilty on 26 counts and finding Earney guilty on 19 counts.[14]

On May 27, the defendants were sentenced. Both Kington and Earney received prison terms of 12 years and fines of $25,000.00.

## B. THE APPLICABLE LAW

### 1. *The 70–day Period for Trial*

The basic provision of the Speedy Trial Act, 18 U.S.C. § 3161(c)(1) states:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the

filing date ... of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs....

■ If the defendant is not tried within this 70–day period, the indictment must be dismissed. The defendant has the burden of proving that a violation of the Act has occurred. 18 U.S.C. § 3162(a)(2). If he does so, dismissal is mandatory, although the Act grants the trial judge broad discretion to dismiss the complaint either with or without prejudice—so long as the judge gives "reasoned consideration" to the three factors listed in § 3162(a)(1): the seriousness of the offense; the facts surrounding the delay; and the impact of reprosecution on the administration of the Act and justice in general. *United States v. Salgado–Hernandez,* 790 F.2d 1265 (5th Cir. 1986); *United States v. Peeples,* 811 F.2d 849, 850–51 (5th Cir.1987).[15]

### 2. *Waiver of the Right to Dismissal*

■ If there has been a Speedy Trial Act violation, the defendant must move for dismissal *before trial begins.* If he does not, the violation is waived under 18 U.S.C. § 3162(a)(2), which provides:

> If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant.... Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section.

See *United States v. Ballard,* 779 F.2d 287, 294 (5th Cir.1986), *cert. denied,* 475 U.S. 1109, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986).

---

**14.** Of the 53 counts in the indictment, 17 counts were dismissed, and were not submitted to the jury.

**15.** "The Act does not create a presumption in favor of dismissal with prejudice when its time limits are violated"; the decision "is entrusted to

the sound discretion of the district judge and ... no preference is accorded to either type of dismissal." *United States v. Salgado–Hernandez,* 790 F.2d at 1267; *United States v. Caparella,* 716 F.2d 976, 978–80 (2d Cir.1983).

This waiver provision was one of the amendments to the Speedy Trial Act proposed by the Department of Justice in 1971. Then Assistant Attorney General Rehnquist explained the amendment: "[O]ur amended section insures that *there must be a timely demand for dismissal,* and that after commencement of trial, the court has no further authority to dismiss. This would discourage assertions of allegedly unknowing or mistaken waivers after the trial has commenced." Explanation of Proposed Amendments in Letter to Senator Ervin from Assistant Attorney General William H. Rehnquist, Oct. 19, 1971, *Speedy Trial: Hearings on S. 895 Before the Subcommittee on Constitutional Rights of the Senate Committee on the Judiciary,* 92 Cong., 1st Sess. (1971) *reprinted in* A. Partridge, Legislative History of Title I of the Speedy Trial Act of 1974, 199 (Fed. Judicial Center 1980).

### 3. *Excludable Time*

The Act also lists a variety of delays that are to be excluded in computing the 70–day trial period. For example, under 18 U.S.C. § 3161(h)(1), excludable time includes "any period of delay resulting from other proceedings concerning the defendant," such as:

(E) delay resulting from any interlocutory appeal;

(F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;

. . . . .

(J) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court....

With regard to pretrial motions, some courts have held that the excludable delay is only the "period of time that is 'reasonably necessary' to conclude a hearing or to complete the submission of the matter to the court for decision." *United States v. Ray,* 768 F.2d 991 (8th Cir.1985).[16] *But this is not correct.* In *United States v. Welch,* 810 F.2d 485, 488 (5th Cir.1987), the Fifth Circuit held:

[The defendant] argues that in any event a delay of a year-and-a-half [in deciding a pretrial motion for severance] is unreasonable. But in *Henderson v. United States,* 476 U.S. 321, 106 S.Ct. 1871, 1876, 90 L.Ed.2d 299 (1986), the United States Supreme Court held that "Congress intended subsection (F) to exclude from the Speedy Trial Act's 70–day limitation all time between the filing of a motion and the conclusion of the hearing on that motion, *whether or not a delay in holding that hearing is 'reasonably necessary.'"* Nothing in the record suggests that [the defendant] attempted unsuccessfully to receive a hearing or that a hearing was deliberately refused with intent to evade the Speedy Trial Act. Therefore, the time from January 25, 1984, until the trial began was excludable under the Speedy Trial Act.... (emphasis added).

### 4. *Waivers of The Speedy Trial Act*

It is common practice, at least in this district, for defendants to file written waivers of their "rights" under the Speedy Trial Act.[17] Often this is done by defense attorneys in conjunction with oral or written motions for continuance, or requests for a new trial date.[18] And, although this question has not been addressed in the Fifth Circuit, *these "waivers" may have the ef-*

---

16. *Accord: United States v. Novak,* 715 F.2d 810, 820 (3rd Cir.1983); *United States v. Mitchell,* 723 F.2d 1040, 1047 (1st Cir.1983).

17. A statement by a defendant that "he waives his *rights* under the Speedy trial act" is somewhat anomalous. Most defendants, at least those who are not in custody, do not want a "speedy" trial. Indeed, they do not want *any* trial.

18. Section 3161(h)(8) authorizes the trial court to grant a continuance "on the basis of [the judge's] findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."

fect of extending the period for trial under the Speedy Trial Act.

### (i) The Act May Not Be Waived

■ It is clear that the operation of the Speedy Trial Act may not be suspended by a waiver filed by the defendant. This is because the Act is designed to protect the interests of the public, as well as the rights of defendants:

> The Committee believes that the right to a speedy trial belongs not only to the defendant, but to society as well. A defendant who is charged with a violation of the law becomes a burden to society in the sense that his status consumes the time and energy of all components of the criminal justice system with which he comes in contact: the police, magistrate, clerks of court, probation officers, judges and others.[19]

Thus, although the Fifth Circuit has not directly addressed this issue,[20] several other circuits have held that a defendant may not waive the limitations of the Speedy Trial Act. See *United States v. Ray*, 768 F.2d 991, 998 n. 11 (8th Cir.1985); *United States v. Pringle*, 751 F.2d 419, 433–34 (1st Cir.1984); *United States v. Carrasquillo*, 667 F.2d 382, 388–90 (3rd Cir.1982). And, this position is certainly supported by the legislative history:

> The Committee wishes to state, in the strongest possible terms, that any construction which holds that any of the provisions of the Speedy Trial Act is waivable by the defendant, other than his statutorily-conferred right to move for dismissal ..., is contrary to legislative intent and subversive of its primary objective: protection of the societal interest

in speedy disposition of criminal cases by preventing undue delay in bringing such cases to trial.
> S.Rep. No. 212, 96th Cong., 1st Sess. 28–29, *reprinted in* A. Partridge, Legislative History of Title I of the Speedy Trial Act of 1974, 182 (Fed. Judicial Center 1980).

■ This means, of course, that a defendant who files a waiver of the Speedy Trial Act may—despite the waiver—move for dismissal if the Act is violated. *Of course, this must be done timely, as required by § 3162(a)(2).*

### (ii) But Delay Caused By A Waiver Is Excludable Time

■ However, it is obvious that a Speedy Trial Act waiver may have some significant consequences under the Act. For example, the filing of the waiver itself may cause a delay of the trial. If it does, then the period of this delay—which is due to the conduct of defense counsel—is excludable time under § 3161(h)(1).

The First Circuit so held in *United States v. Pringle*, 751 F.2d 419 (1st Cir. 1984). There, the defendants were indicted on August 31, 1982, but their trial did not commence until December 5, 1983—*some 463 days later.* One motion for continuance filed by the defendants, based on "defense counsel scheduling conflicts and unavoidable discovery delays," did extend the Speedy trial Act period.[21] A subsequent motion for continuance contained the statement that "all defendants in the above-captioned matter waive their rights to a speedy trial." However, before the trial commenced, the defendants moved for dismissal because of violations of the Speedy Trial Act. This motion was "summarily

---

**19.** Report of the House Committee on the Judiciary, H.R.Rep. No. 1508, 93d Cong., 2d Sess. 15, *reprinted in* 1974 U.S.Code Cong. & Ad.News 7401, 7408.

**20.** See *United States v. Peeples*, 811 F.2d 849, 851 n. 1 (5th Cir.1987) ("[W]e express no opinion on that issue.") See also *United States v. Dickie*, 775 F.2d 607 (5th Cir.1985); *United States v. Howell*, 719 F.2d 1258, 1261 (5th Cir.1983), *cert. denied*, 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984).

**21.** "The legislative history of the Speedy Trial Act Amendments Act of 1979 indicates that *scheduling conflicts of either defense or government counsel were intended by Congress to be legitimate grounds for granting a continuance* under § 3161(h)(8). The Amendments Act inserted into the list of factors to be considered by the court, '[w]hether the failure to grant such a continuance ... would unreasonably deny the defendant or the Government continuity of counsel ...' § 3161(h)(8)(B)(iv)." *Pringle*, 751 F.2d at 432.

denied" by the district court, and the defendants were tried and convicted.

On appeal, the First Circuit first held that the defendants could not waive the Speedy Trial Act, so their waiver "was inoperative." However, *the court also held that any period of delay caused by the waiver would be excludable time under the Act.* The opinion reasons:

> We first consider the possibility that the waiver cause the delay. *If we were to find that the delay caused by the waiver did not stop the speedy trial clock, then we would be rewarding the defendants by enhancing their chances of dismissal.* In essence, defendants would have successfully worked both sides of the street, lulling the court and prosecution into a false sense of security only to turn around later and use the waiver-induced leisurely pace of the case as grounds for dismissal. The sanction of dismissal was intended by Congress to serve as a deterrent for the failure of the United States Attorney or the court to comply with the Act.
>
> [But] where it is the conduct of the defendant or defense counsel which creates the delay, it is only the public's interest in a speedy trial which has been violated. Using the sanction of dismissal for such delay would be counterproductive because, even though it might keep the courts and the prosecution more on their toes, the possibility of dismissal would serve as a powerful incentive for defendants and defense counsel to create delay....[22] (751 F.2d at 434) (emphasis added).

Therefore, in *Pringle*, the Second Circuit held "that where a waiver creates delay such delay will be excludable time" under the Act. Accordingly, the case was remanded for the trial court to determine if the violation of the Speedy trial Act was caused by the waiver filed by the defendants.

*Pringle* is supported by other cases which hold that, where the conduct of the defendant causes the delay, there is no violation of the Speedy Trial Act. See *United States v. Delongchamps*, 679 F.2d 217, 219 (11th Cir.1982) (delay caused by waivers that were "manifestly intended to secure a continuance ... and were submitted for no other purpose"); *United States v. Young*, 593 F.2d 891, 892 (9th Cir.1979).[23] See also 57 A.L.R.2d 302, Supp. §§ 5, 9. But see *United States v. Carrasquillo*, 667 F.2d 382 (3rd Cir.1981); *United States v. Ray*, 768 F.2d 991, 998 n. 11 (8th Cir.1985).

Similarly, the results reached in *Pringle* are supported by the legislative history of the Act. In discussing delay that might be caused by a defendant's failure to prepare for trial, the House Report states: "In the event that the defendant actively participated in the delay, then no miscarriage of justice has occurred and the court should deny the defendant's or his counsel's request for a continuance and require the trial to commence on the scheduled date. *This is consistent with the well-reasoned view that a defendant should not profit doubly from delay he is responsible for.*" 1974 House Report *reprinted in* 1974 U.S. Code Cong. & Ad.News 7401, 7426 (emphasis added).

Therefore, this Court reaches the same conclusions as *Pringle*. A defendant may not waive the Speedy Trial Act and—despite a waiver—he may timely move for dismissal if the time periods of the Act are violated. However, *if the violation of the Speedy Trial Act is caused by the conduct of the defendant or his counsel in filing the Speedy Trial Act waiver, then the defendant may not profit from the delay*

---

**22.** *Pringle* also states: "We think it *unethical and dishonest* for defense counsel to waive the Act in the trial court and then disclaim such waiver upon appeal." (751 F.2d at 434.)

**23.** There is indirect support for the conclusions reached in this opinion in two Fifth Circuit cases: *United States v. Howell*, 719 F.2d 1258, 1261 (5th Cir.1983), *cert. denied*, 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984) (waiver was not filed *solely* to obtain a continuance); *United States v. Peeples*, 811 F.2d 849, 851 (5th Cir.1987) (fact that conduct of defendant was "at least in part responsible" for confusion about Speedy Trial Act deadlines supported trial court's dismissal without prejudice).

*he caused—and this delay is excludable time under the Act.*

## C. NO SPEEDY TRIAL ACT VIOLATIONS

In support of their Speedy Trial Act motions, the defendants first argue that there was only "one trial" in this case. Then, ignoring most of the applicable law,[24] they add all of the "non-excludable" time from each of the five distinct periods described above in "The Procedural History." And, in this manner, they contend that the Speedy Trial Act was violated because it supposedly took either 143 or 346 or 490 "non-excludable" days to try them[25]—well over the 70–day period prescribed by the Act.

The defendants' "only one trial" premise is wrong. Moreover, from a consideration of each of the five distinct time periods—*in light of the applicable law*—it is obvious that there was no violation of the Speedy Trial Act in this case.

### 1. *Two Trials ... Not One*

The defendants' premise that they have had "only one trial" will not reach the Fifth Circuit in virgin state in *Kington III*—because it was rejected both in *Kington I* and in *Kington II.*

In *Kington I,* the Fifth Circuit noted that Judge Woodward's suppression ruling "was made after selection and swearing of the jury, the defendants having waived their right to object on double jeopardy grounds *to a new trial.*" (801 F.2d at 734) (emphasis added). It also held that it had jurisdiction of the government's interlocutory appeal under 18 U.S.C. § 3731 because the first trial had ended:

> What the statute forbids is the interruption of trial, an appeal by the United States from a suppression order during an ongoing trial. In the instant case, the government appeals from the district court's suppression order that was entered three weeks *after the district court had ended the trial* by discharging the jury. (801 F.2d at 735) (emphasis added).

In *Kington II,* the Fifth Circuit again addressed the defendants' argument—this time in a double jeopardy context—"that the government's appeal did not terminate the trial." The opinion—stating that the defendants' first contention "makes little sense" and the second "hinges upon a stilted interpretation"—held for the second time that the defendants had waived their right to object *"to a new trial"* on double jeopardy grounds, referring to one defense attorney's:

> ... positive assurance [to Judge Woodward] that "[i]f it [this case] is reversed and remanded for trial, we waive the issue of double jeopardy as a result of *the second trial* to the extent that any jeopardy may have already attached from the impaneling of this jury." Kington, Earney's counsel and Earney all agreed with this stipulation. The district court's discharge of the jury did not alter the effect of their waivers. (835 F.2d at 109) (emphasis added).

There were, obviously, two trials of the defendants. Judge Woodward started the first trial in October 1985, but then terminated it by granting the defendants' motion to suppress, and this resulted in the *Kington I* appeal. This Court—after being interrupted by the interlocutory appeal in *Kington II*—conducted the second trial in April of 1988. Accordingly, there is simply no basis for "stacking" time under the

---

**24.** For example, the defendants simply ignore the "waiver of the right to dismissal" language of § 3162(a)(2)—and they argue, contrary to *United States v. Welch,* 810 F.2d at 488, that "pretrial motions" result in excludable time only if they "cause" some actual delay. See *United States v. Welch,* 810 F.2d 485, 488 (5th Cir.1987), citing *Henderson v. United States,* 476 U.S. 321, 106 S.Ct. 1871, 1876, 90 L.Ed.2d 299 (1986). They do, however, deal with *United States v. Pringle,* 751 F.2d 419 (1st Cir.1984), by criticizing the result as "the product of [the court's] anger toward defense counsel as opposed to careful reasoning."

**25.** Basically, defendants urge the 490 day-figure "if defendants' waivers are considered inoperative and the pretrial motion time is not excluded"—but the 143 day-figure if "we automatically exclude pretrial motion time." However, all three calculations are the total of "non-excludable time" which the defendants purport to find *in all five periods* involved in this case.

Speedy Trial Act on the premise that there was only "one trial."

### 2. The First Trial: Feb. 19, 1985–Nov. 21, 1985

Obviously, the first trial of the defendants was not commenced within 70 days of February 20, 1985, the date of their "first appearance" before the magistrate. 18 U.S.C. § 3161(c)(1).

 However, it is clear that the conduct of the defendants—in filing waivers of the Speedy Trial Act, as well as submitting an *agreed order* setting the case for trial in October 21, 1985—did cause the delay of the trial, first to August 5 and then to October 21. As held by *Pringle,* all of this delay would be excludable time under the Act. *United States v. Pringle,* 751 F.2d 419.

 Moreover, at no time before Judge Woodward started the trial on October 21, 1985—with the selection of the jury [26]—did either defendant move to dismiss the charges because of a violation of the Speedy Trial Act. Accordingly, under 28 U.S.C. § 3162(a)(2), they waived their "right to dismissal" for any violations of the Act. See *United States v. Ballard,* 779 F.2d at 294; *United States v. Milhim,* 702 F.2d 522, 526 (5th Cir.1983).

*This means that the defendants have no right to count any "non-excludable" time from this first period in their present Speedy Trial Act calculations. If this were not so, then the "waiver of the right to dismissal" under § 3162(a)(2) would be meaningless* —and the defendants, contrary to *Pringle,* would be rewarded for their conduct in creating the very delay of which they now complain.

### 3. The Kington I Appeal: Nov. 22, 1985–Nov. 24, 1986

On November 22, 1985, the government gave notice of its interlocutory appeal in *Kington I.* This prevented the Speedy Trial Act clock from starting again—because, under 18 U.S.C. § 3161(h)(1)(E), *the entire delay from this appeal is excludable time under the Act.*

 Moreover, the Speedy Trial Act contemplates that a new 70–day period will begin to run whenever a new trial is granted—including an interlocutory appeal which results in a reversal and remand for a new trial, as in *Kington I.* 18 U.S.C. § 3161(e) provides:

If the defendant is to be tried again following a declaration of the trial judge of a mistrial or following an order of such judge for a new trial, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final. If the defendant is to be tried again following an appeal or a collateral attack, the trial shall commence within seventy days from the day the action occasioning the retrial becomes final. . . .

 Here, the mandate in *Kington I* was issued on November 24, 1986. Accordingly, the Speedy Trial Act began to run again on that date. *United States v. Mize,* 820 F.2d 118, 120 (5th Cir.1987), cert. denied, —— U.S. ——, 108 S.Ct. 328, 98 L.Ed. 2d 355 (1987).[27]

### 4. The Next Trial Setting: Nov. 25, 1986–May 7, 1987

 Following the remand, the case was not transferred to this Court by Judge Woodward until December 17, 1986, some three weeks after the *Kington I* mandate.

---

**26.** Contrary to the defendants' contentions, a trial is "commenced" under the Speedy Trial Act when the jury is selected and sworn, even if no evidence is presented. *United States v. Howell,* 719 F.2d 1258, 1262 (5th Cir.1983), cert. denied, 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984). See also *United States v. Gonzales,* 671 F.2d 441, 443–44 (11th Cir.1982), cert. denied, 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982); *United States v. Scaife,* 749 F.2d 338, 343 (6th Cir.1984).

**27.** See also *United States v. Cook,* 592 F.2d 877, 880 (5th Cir.1979). But see *United States v. Lasteed,* 832 F.2d 1240, 1242 (11th Cir.1987), in which the 11th Circuit noted that there was a significant split of authority as to whether it is the *issuance* or the *receipt* of the mandate that triggers the Speedy Trial Act.

This period would have been excludable time under 18 U.S.C. § 3161(h)(1)(G):

> (G) Delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district [is excludable in computing the 70–day trial period] ...

No order to this effect was ever entered—but this was only because the actions of the defendants made it unnecessary.

### (i) The Motion for Continuance

■ On December 18, 1986, this Court set the case for trial on March 2, 1987. Although this was more than 70 days from the date of the *Kington I* mandate, the Court had been advised that the defendants planned to file a motion for continuance because of their petition for writ of certiorari in *Kington I.*[28] And, on February 3, 1987,[29] the defendants did file their motion for continuance, stating that they had "heretofore waived their rights to a speedy trial" and would "further waive their rights" if the continuance was granted.

■ Because of this conduct of the defendants—moving for a continuance, re-urging their previous waivers, and offering new waivers—this Court reset the case for trial on June 1, 1987. *At no time before this date did the defendants ever move to dismiss because of alleged Speedy Trial Act violations—or retract their statements in the continuance motion and seek a "speedy trial."*[30] Instead, after their petition for certiorari was denied (April 20, 1987), they further delayed the trial by an interlocutory appeal in *Kington II* (which began with the filing of a notice of appeal on May 8, 1987).

This means that the defendants have no right to include any time from this third period in their present Speedy Trial Act calculations. If this were not so, then—*contrary to the teachings of Pringle*—(i) the defendants would be rewarded for their conduct in creating the very delay of which they complain, and (ii) this would be an "incentive for defendants and defense counsel to create delay" in other cases. *United States v. Pringle,* 751 F.2d 419.

### (ii) The Pending Pretrial Motions

In addition, several other motions—besides the double jeopardy and continuance motions—were filed by the defendants on February 3, 1987. These motions were not decided until April 4, 1988, the day before the jury was selected for the second trial.

■ Under 18 U.S.C. § 3161(h)(1)(F), all of the time from the filing of these motions until the conclusion of the hearing on those motions is excludable time under the Act. *United States v. Welch,* 810 F.2d at 488, citing *Henderson v. United States,* 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986). Certainly, the defendants never asked for a hearing on these motions while the interlocutory appeal in *Kington II* was pending.[31] Nor did this Court deliberately withhold decision on the motions with the intent to evade the Speedy Trial Act.[32]

### (iii) The Additional February 3 Motion

■ As stated above (see note 12), the defendants contend that the motions discussed in the two preceding sections were not filed until February 6, 1987—*71* days from the date of the *Kington I* mandate.

---

**28.** The petition for writ of certiorari was filed with the Supreme Court on January 9, 1987. A copy was delivered to this Court by defense counsel. Since the Fifth Circuit mandate was not stayed, this petition for certiorari did not "toll the statutory period" under the Speedy Trial Act. *United States v. Scalf,* 760 F.2d 1057, 1059 (10th Cir.1985).

**29.** On February 3, 1987, when the defendants' continuance motion was filed, only *68 days* had elapsed since the date of the November 24, 1986 mandate in *Kington I.*

**30.** It was not until February 9, 1988 that Earney raised any Speedy Trial Act objections; Kington did not do so until February 16, 1988.

**31.** Obviously, a district court does not need to rule on motions while there is an interlocutory appeal. *United States v. Ferris,* 751 F.2d 436, 440–41 (1st Cir.1984).

**32.** This Court sits in Dallas. The case was to be tried in Abilene. It was more convenient—both for the defendants, the attorneys and the witnesses—to hear arguments and evidence on these pending motions in Abilene just before the start of the trial.

However, this dispute is academic because they agree that Kingston's attorney delivered a letter-motion on February 3, 1987 to this Court in Dallas—in which he requested an extension of time to comply with certain deadlines set for February 4, 1987 in the Pretrial Order. This letter states:

> I am writing this letter (as opposed to a formal motion that would required more time) in hopes that the Court will extend to counsel sufficient time to comply with the Court's Order. I am pleased to give [the government attorney] a like amount of time, and I don't believe either one of us will be prejudiced.[33]

This letter alone—which was considered by the Court in lieu of a formal motion—was sufficient to extend the Speedy Trial Act until February 9, 1987, when this Court issued a new Pretrial Order setting the case for trial on June 1, 1987. Accordingly, the defendants "agree that [this letter] caused the time under the Speedy Trial Act to stop on February 3 and to extend all time until the Court's pre-trial order was amended." [34]

For these reasons, *the defendants have no right to include any time from the third period in their present Speedy Trial Act calculations.*

### 5. The Kingston II Appeal: May 8, 1987–Jan. 29, 1988

■ On May 1, 1987, after the defendants' petition for certiorari had been rejected in *Kingston I*, this Court denied their motion to dismiss the indictment because of "double jeopardy." This resulted in the *Kingston II* appeal, which began with the defendants' notice of appeal filed May 8, 1987. The Fifth Circuit held that the defendants had "waived their rights afforded by the double jeopardy clause"—and remanded the case for the "new trial" which had been contemplated by *Kingston I* and by Judge Woodward. *Kingston II*, 835 F.2d 106.

The entire period of this appeal was excludable time under the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(E). Moreover, the Act contemplates that a new 70–day period will begin to run when a new trial is granted or "following an appeal." 18 U.S.C. § 3161(e). Accordingly, the Speedy Trial Act period began again on January 29, 1988, when the *Kingston II* mandate was issued. *United States v. Mize*, 820 F.2d at 120.[35]

However, there is another reason why the defendants have no right to count any "non-excludable" time before the *Kingston II* mandate in their present Speedy Trial Act calculations. *According to the defendants' theory, the Act had been violated before they filed the notice of appeal on May 8, 1987. Yet, at no time before that date did the defendants move for a dismissal on Speedy Trial Act grounds.*

■ Under § 3162(a)(2), a defendants waives any violation of the Act unless he "moves for dismissal prior to *trial.*" At this time, trial was set for June 1, 1987, *with all pretrial motions due by April 10, 1987.*[36] But the defendants did not file a motion to dismiss based on the Speedy Trial Act; instead, they proceeded with the interlocutory appeal in *Kingston II*. By doing so, the defendants—if their Speedy Trial Act arguments are correct—would have:

> (i) prevented this Court from addressing the Speedy Trial Act issues when

---

**33.** This February 3, 1987 letter by Kingston's attorney also states that "the defendants have filed a motion for continuance" based on the pending certiorari petition in *Kingston I*—and "since this case has already been put off substantially, *additional delay of a few months should not prejudice any parties.*" (This letter was filed of record by Order dated October 28, 1988.)

**34.** See the November 4, 1988 letter by Ben L. Krage, Kingston's attorney, and the November 9, 1988 letter by David W. Coody, one of Earney's attorneys (filed of record by Order dated June 9, 1989).

**35.** In addition, for the reasons discussed above, the defendants had no right to include *any* time from the first three periods in their Speedy Trial Act calculations after the *Kingston II* remand.

**36.** See *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (Jan. 25, 1988) (defense attorney not permitted to present testimony of a witness who was not listed before trial as required by state court pretrial discovery rule).

they were ripe for decision;[37]

(ii) wasted the valuable time of the Fifth Circuit with a needless appeal in *Kington II.*

*Under these circumstances, the defendants have waived the right to rely upon any supposed violations which took place before or during the fourth period.* Indeed, to hold otherwise would render meaningless the "waiver of the right to dismissal" under § 3162(a)(2); and, it would also —contrary to *Pringle*—reward the defendants for their conduct in creating the very delay of which they now complain.[38]

### 6. The Second Trial: Jan. 30, 1988–April 5, 1988

There were no violations of the Speedy Trial Act in connection with this period, which deals with the second trial. *The defendants do not claim otherwise.*[39]

The Speedy Trial Act clock began on January 29, 1988, when the Fifth Circuit was issued in *Kington II.* The case was set for trial for April 5, 1988—a date which was less than 70 days from the issuance of the mandate. There were motions filed which would have extended the time for trial, but this was immaterial. The trial commenced on April 5, 1988, with the selection of the jury—and, on April 13, 1988, the defendants were convicted.

**37.** Absent any limitations problems, a trial court could—if there were violations of the Act—dismiss the case without prejudice under 18 U.S.C. § 3162(a)(1).

**38.** It is no excuse for the defendants to now argue that "at the time the waives were made, counsel honestly believed ... that defendants could 'waive' the requirements of the Speedy Trial Act." When the waivers were filed by the defendants in 1985—and renewed, in effect, in their February 3, 1987 motion for continuance —there had been several decisions, confirmed by the legislative history, which held that defendants may not waive the limitations of the Act. See *United States v. Ray,* 768 F.2d 991; *United States v. Pringle,* 751 F.2d 419; *United States v. Carrasquillo,* 667 F.2d 382.

**39.** The defendants and the government are in disagreement about an issue which this Court considers to be a collateral one: whether the Court granted or denied the "Motion to Extend Time for Trial" filed by the government on February 4, 1988. In fact, this Court's Order of February 19, 1988—which set the case for trial

## CONCLUSIONS

This case is a troublesome one—but only because of the positions advanced by the defendants,[40] not because of the law which applies.

*After they were indicted on February 19, 1985, the defendants did not want a "speedy trial."* Instead, they filed waivers of their "rights" under the Act; they agreed to an order setting the case for trial on October 21, 1985, almost eight months later; and they did not complain of any supposed Speedy Trial Act violations, either before the first trial began or before the *Kington I* appeal.

*When the case was transferred to this Court after* Kington I, *the defendants still did not want a "speedy trial."* Instead they filed a motion for continuance; re-urged their previous waivers and offered more; they objected to the trial setting of March 2, 1987, but did not object to the June 1, 1987 trial date; and they did not complain of any purported Speedy Trial Act violations either before the due date for all pretrial motions (April 10, 1987) or before the *Kington II* appeal.

However, when the mandate was issued in *Kington II*, the defendants had a sudden desire—*almost three years after they had been indicted*—for a "speedy trial." They

on April 5, 1988, a date within the 70–day Speedy Trial Act period—was intended as a denial of the government's motion. However, this was only because the defendants failed to file any "speedy trial" motions until March 11, 1988. If they had raised this issue in 1987 before the *Kington II* appeal, then this Court—to avoid any possibility that there *may* have been "non-excludable" time which the defendants could count after the *Kington II* remand—would have granted the government's motion. But in either event (whether the government's motion had been granted or denied), the trial date would have been set for April 5, 1988.

**40.** This Court, of course, is not expressing anger at the defense counsel because of the Speedy Trial Act motions. To the contrary, it expects all defense attorneys in criminal cases—especially those of the quality of the counsel for the defendants in this case—to fulfill their ethical responsibility by raising every possible defense for their clients.

opposed the government's motion to extend the time for trial; and, this Court agreed, setting the case for trial within the 70–day period required by the Speedy Trial Act. Notwithstanding their conduct,[41] the defendants now purport to find numerous and substantial violations of the Act.

It is true, as the defendants argue, that they could not waive the requirements of the Speedy Trial Act. However, as explained in this opinion:

(i) by failing to retract their waivers and move for dismissal—before the first trial and before the two interlocutory appeals—the defendants have waived their right to have the case dismissed for any violations of the Act;

(ii) because the conduct of the defendants caused the delays in the trial of this case—the very delays of which they now complain—the entire period of these delays is excludable time under the Speedy Trial Act.

The arguments advanced by the defendants are baseless. 18 U.S.C. § 3162(a)(2); *United States v. Pringle*, 751 F.2d 419. Consequently, their "motion to dismiss on speedy trial grounds" will be DENIED.

---

**41.** And notwithstanding the fact that Judge Woodward would have given the defendants "a speedy trial" within 70 days of the indictment; that this Court certainly would have given the defendants "a speedy trial" within 70 days from the mandate in *Kington I;* and that this Court did give them "a speedy trial" within 70 days of the *Kington II* mandate.