**UNITED STATES, Appellee,**

v.

**La–Dell V. WOOTEN, Specialist,
U.S. Army, Appellant.**

**No. 66,108.
CM 8902072.**

U.S. Court of Military Appeals.

Argued Oct. 2, 1991.

Decided March 11, 1992.

For Appellant: *Captain Michael J. Berrigan* (argued); *Colonel Robert B. Kirby* and *Major Michael J. Kelleher* (on brief); *Lieutenant Colonel Russell S. Estey.*

For Appellee: *Captain Marcus A. Brinks* (argued); *Lieutenant Colonel Daniel J. Dell'Orto* (on brief).

*Opinion*

SULLIVAN, Chief Judge:

On June 26, 1989, appellant was tried by a military judge sitting as a general court-martial at Garlstedt, Federal Republic of Germany. Contrary to his pleas, he was convicted of fourteen specifications of making worthless checks with intent to defraud, in violation of Article 123a, Uniform Code of Military Justice, 10 USC § 923a. The military judge sentenced appellant to a bad-conduct discharge, confinement for 2 years, total forfeitures, and reduction to Private E1. The convening authority approved the sentence but suspended for 1 year, with provision for automatic remission, confinement in excess of 12

months. Later, part of the forfeitures was suspended. The Court of Military Review affirmed the findings of guilty and the sentence in a short-form decision (December 4, 1990).

We granted review on the following issue:

WHETHER THE MILITARY JUDGE ERRED IN ADMITTING, OVER DEFENSE OBJECTION, APPELLANT'S BANK RECORDS OBTAINED IN VIOLATION OF APPELLANT'S RIGHTS.

We hold that the prosecution's acquisition of appellant's bank records and their introduction at his overseas court-martial did not violate his Fourth Amendment rights. *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). We also hold that trial counsel's alleged violations of Federal law in issuing and serving the subpoenas duces tecum in this case would not warrant exclusion of the challenged evidence as an exercise of our military justice supervisory authority. *See United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980). *See generally United States v. Sturman*, 951 F.2d 1466 (6th Cir.1991).

At trial, defense counsel moved to suppress government evidence of "certain bank records pertaining to Specialist Wooten." He stated:

The defense hereby notifies the Government that the defense intends to move for a preliminary ruling on the admissibility of records pertaining to SPC Wooten. *The defense position is that such records are inadmissible because they were obtained in violation of the Right to Financial Privacy Act, 12 USC § 3401 et seq., and AR 190–6, Obtaining Information from Financial Institutions (15 Jan 82).* The records the defense maintains are inadmissible are the checks drawn on American State Bank and cashed at Pentagon Federal Credit Union (which form the basis for specifications 7 through 18) and all of SPC Wooten's bank records at Pentagon Federal Credit Union, Garlstedt, and American State Bank, Killeen, Texas (account number 21–2407–6).

(Emphasis added.)

The military judge conducted a hearing on this motion. The following comments were made, *inter alia:*

MJ: I take it, government, you did not go through—you did not use the Right To Financial Privacy Act to obtain this information?

TC: We used an exception to the Right To Financial Privacy Act, Your Honor.

MJ: Let me see the Act.

TC: If I may step into the—

MJ: You don't have it in court?

TC: I have it.

MJ: What exception?

TC: 341[3](e), Your Honor.

MJ: 341[3](e). [Examines the Act.] What do you have to say about that, Captain Masterton?

DC: Could I see the Act, Your Honor?

MJ: I'm sorry, I thought you—

DC: I have not been notified of this particular ground. [Approaches the bench and examines the Act.]

Subsequently, trial counsel, after asking permission to leave the courtroom to obtain his file, asserted that he had subpoenaed these records.

MJ: No. Trial counsel, give me an offer of proof here. I take it all these checks were coming back and they were bouncing, is that right?

TC: That's correct, Your Honor.

MJ: Both at the Pentagon and—at what—AAFES [Army & Air Force Exchange Service] Car Rental?

TC: AAFES, Your Honor, as well as 59th Finance.

MJ: 59th?

TC: F and AO, U.S. Army, 59th Finance.

MJ: So, did the CID [Criminal Investigation Command] take over this case?

TC: [Pause.]

MJ: Well, did somebody start investigating?

TC: Yes, Your Honor.

MJ: *And, how did you get the accused's bank records?*

TC: *I subpoenaed them, Your Honor.*

MJ: *You subpoenaed them?*

TC: *Yes, Your Honor.*

MJ: *Oh, after the case was referred?*

TC: *Yes,* Your Honor.

MJ: When was it referred?

TC: [Examines the charge sheet.]

MJ: 17 May?

TC: 17 May. Yes. Your Honor.

MJ: All right, are you satisfied that he subpoenaed the records?

DC: *I have never seen the subpoenas, Your Honor,* and as a matter of fact, there are some arguments that I have concerning the subpoenas as well. Basically, *the defense position is that, with regard to at least certain of these records, there is no proper subpoena that they could serve.* For example, on the records from the American State Bank, those records are in the United States and the defense position is that there is no subpoena which can be issued in the Federal Republic of Germany that would have any authority or power in the United States.

MJ: Why haven't you shown him the subpoenas?

TC: [No response.]

MJ: Have you—

DC: I was not aware that there were subpoenas issued, Your Honor.

(Emphasis added.) Trial counsel later explained that two civilian witnesses who had been served with a subpoena duces tecum were bringing the records from different banks in the United States.

Later in the discussion, defense counsel clarified his position concerning these subpoenas:

DC: Your Honor, the Manual For Courts [sic] of the Uniform Code of Military Justice, Article 46, indicates that trial counsel will have the authority to obtain witnesses, the authority similar to that which is granted to prosecutors in the Federal courts. Generally, those powers apply only to subpoenaing peo-

ple within the United States and its territories to appear within the United States and its territories.

MJ: You're saying that they don't have the authority and it violates what?

DC: Your Honor, I'm saying that the *Government doesn't have the authority to issue a subpoena, therefore, one of the exceptions to the Financial Right To Privacy Act, the subpoena, doesn't apply here.*

(Emphasis added.)

The military judge ruled that the checks were not bank records under the *Right To Financial Privacy Act* and that, if that statute had somehow been violated for the bank records, the sole remedy was a civil suit. He stated:

MJ: All right, this is what I find: First of all, I find the accused has no privacy right whatsoever in the checks that were bounced and that the Act doesn't cover that as a bank record; Second, that if the Act was violated, the *Jackson [United States v. Jackson,* 25 MJ 711 (ACMR 1987)] case covers it, and that *Jackson* says the motion to suppress is not the remedy; *the remedy is the civil one.* So, based on that I'm going to allow the Government to present this evidence. So, the motion to suppress is denied.

(Emphasis added.)

Appellate defense counsel expanded on the defense argument below and again asserted that appellant's bank records were obtained through illegal use of compulsory process. He supported his argument by reviving trial defense counsel's claim that there was no subpoena which the Government could have legally issued to bring appellant's bank records from the United States to Germany. He also cited various authorities which purportedly suggest that in these circumstances the bank records should not have been released by his bank. These authorities include United States and California Supreme Court cases concerning the Fourth Amendment exclusionary rule, the *Right to Financial Privacy Act,* 12 USC §§ 3401–22, and Army Regulation (AR) 190–6 (15 Jan 82). Moreover, he con-

cluded his brief by asserting that appellant's status as a soldier overseas enabled trial counsel to more easily circumvent these laws and denied him his right to military due process. On this basis, appellant requested that this Court exercise its supervisory authority over the military criminal justice system and rule that his bank records should have been suppressed.

## I

■ The first argument we will address in this case is the one raised by defense counsel at trial; namely that suppression of the challenged evidence is required by the *Right to Financial Privacy Act*, 12 USC §§ 3401–22. The subjects of his motion were 20 returned checks drawn on appellant's account at the American State Bank of Killeen, Texas; various pages

from appellant's checking account record at the same bank; and various pages from appellant's savings account record at the Pentagon Federal Credit Union at Garlstedt where some of the checks were cashed. These records were constructed and maintained at bank processing centers in the United States and were brought to this court-martial in Germany by bank officials. "Subpoenas duces tecum" [1] were issued to these witnesses by trial counsel, but they were not introduced as evidence in this case.

Trial defense counsel grounded his motion for suppression of this evidence on the *Right to Financial Privacy Act* and failure of trial counsel to comply with the requirements of this act in securing his bank records. *See* 12 USC § 3402(4).[2] He particularly asserted that the lawful-judi-

---

1. "The subpoena *duces tecum,* an ancient writ well known to the common law, is the process by which a court requires the production at the trial of documents, papers, or chattels material to the issue." *Vaughan v. Broadfoot,* 267 N.C. 691, 149 S.E.2d 37, 40 (1966) (citations omitted). Fed.R.Crim.P. 17(a) and (c) slightly expands on this ancient writ by permitting production prior to trial. *See United States v. McCollom,* 651 F.Supp. 1217, 1224 (N.D.Ill.1987). That Rule states:

> Rule 17. Subpoena
> (a) *For Attendance of Witnesses; Form; Issuance.* A subpoena shall be issued by the clerk under the seal of the court. It shall state the name of the court and the title, if any, of the proceeding, and shall command each person to whom it is directed to attend and give testimony at the time and place specified therein. The clerk shall issue a subpoena, signed and sealed but otherwise in blank to a party requesting it, who shall fill in the blanks before it is served. A subpoena shall be issued by a United States magistrate in a proceeding before that magistrate, but it need not be under the seal of the court.
> \* \* \* \* \* \*
> (c) *For Production of Documentary Evidence and of Objects.* A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evi-

dence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

*See generally* C. Wright, *Federal Practice and Procedure: Criminal 2d* § 274 (1982). Authorities also agree that a subpena may be issued for production of the documents without the presence at trial of the person producing the documents. *See* 8 Wigmore, *Evidence* § 2200(1)(ii) at 126 (McNaughton rev. 1961).

2. **§ 3402. Access to financial records by Government authorities prohibited; exceptions**

> Except as provided by section 3403(c) or (d), 3413, or 3414 of this title, no Government authority may have access to or obtain copies of, or the information contained in the financial records of any customer from a financial institution unless the financial records are reasonably described and—
> (1) such customer has authorized such disclosure in accordance with section 3404 of this title;
> (2) such financial records are disclosed in response to an administrative subpena or summons which meets the requirements of section 3405 of this title;
> (3) such financial records are disclosed in response to a search warrant which meets the requirements of section 3406 of this title;
> (4) *such financial records are disclosed in response to a judicial subpena which meets the requirements of section 3407 of this title; or*
> (5) such financial records are disclosed in response to a formal written request which meets the requirements of section 3408 of this title.

(Emphasis added.)

cial-subpoena requirement found in 12 USC § 3407(1)[3] was violated because the subpoenas issued by trial counsel were illegal under this Court's decision in *United States v. Bennett*, 12 MJ 463 (1982). He also asserted that no other exceptions[4] to this Act applied in his case and, contrary to the decision of the Army Court of Military Review in *United States v. Jackson*, 25 MJ 711, 713 (1987), suppression was the appropriate remedy for evidence so secured. We disagree.

Trial counsel asserted that the above statute is not applicable in cases where he seeks an accused's bank records for purposes of prosecution at court-martial. Indeed, § 3413(e) of the *Right to Financial Privacy Act* states:

3. **§ 3407. Judicial subpena**
A Government authority may obtain financial records under section 3402(4) of this title pursuant to judicial subpena only if—
(1) such subpena is authorized by law and there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry;
(2) a copy of the subpena has been served upon the customer or mailed to his last known address on or before the date on which the subpena was served on the financial institution together with the following notice which shall state with reasonable specificity the nature of the law enforcement inquiry....
[Notice omitted.]

4. Defense counsel at trial labeled 12 USC § 3407(1) an exception when technically it is a permissible way to secure records under the Act. *See* 12 USC § 3407; *cf.* 12 USC § 3413.

5. **§ 846. Art. 46. Opportunity to obtain witnesses and other evidence**
The trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe. Process issued in court-martial cases to compel witnesses to appear and testify and to compel the production of other evidence shall be similar to that which courts of the United States having criminal jurisdiction may lawfully issue and shall run to any part of the United States, or the Territories, Commonwealths, and possessions.

6. RCM 703(e)(2)(B) provides:
(e) *Procedures for production of witnesses.*
(1) *Military witnesses.* The attendance of a military witness may be obtained by notifying

**(e) Disclosure pursuant to Federal Rules of Civil or Criminal Procedure or comparable rules of other courts**

Nothing in this chapter shall apply when financial records are sought *by a Government authority under* the Federal Rules of Civil or Criminal Procedure *or comparable rules of other courts in connection with litigation to which the Government authority and the customer are parties.*

(Emphasis added.)

Defense counsel impliedly conceded that a subpoena issued under the authority of Article 46, UCMJ, 10 USC § 846,[5] and pursuant to RCM 703(e)(2),[6] Manual for Courts–Martial, United States, 1984, to a person in the United States for a court-

the commander of the witness of the time, place, and date the witness' presence is required and requesting the commander to issue any necessary orders to the witness.

\* \* \* \* \* \*

(2) *Civilian witnesses-subpoena.*
(A) *In general.* The presence of witnesses not on active duty may be obtained by subpoena.

Discussion

A subpoena is not necessary if the witness appears voluntarily at no expense to the United States.

Civilian employees of the Department of Defense may be directed by appropriate authorities to appear as witnesses in courts-martial as an incident of their employment. Appropriate travel orders may be issued for this purpose.

A subpoena may not be used to compel a civilian to travel outside the United States and its territories.

A witness must be subject to United States jurisdiction to be subject to a subpoena. Foreign nationals in a foreign country are not subject to subpoena. Their presence may be obtained through cooperation of the host nation.

(B) *Contents.* A subpoena shall state the command by which the proceeding is directed, and the title, if any, of the proceeding. A subpoena shall command each person to whom it is directed to attend and give testimony at the time and place specified therein. *A subpoena may also command the person to whom it is directed to produce books, papers, documents or other objects designated therein at the proceeding or at an earlier time for inspection by the parties.*

(Emphasis added.)

martial held therein would meet the "comparable rules" requirement of 12 USC § 3413(e). However, he correctly noted that this Court has held that no valid Federal statute or regulation can order a civilian in the United States to attend a court-martial outside of our country. *See United States v. Bennett, supra.* Consequently, he argued that no valid Federal statute or regulation can order a civilian to bring documents from the United States to an overseas court-martial. Thus, he concluded that the above exception to the *Right to Financial Privacy Act* did not apply in this case. Assuming the continued validity of *United States v. Bennett, supra,* his argument is not illogical.

Nevertheless, even assuming the *Right to Financial Privacy Act* applies, trial defense counsel's request for suppression must fail. At least two federal courts of appeals have held that this statute's civil remedies are exclusive and that they do not extend to the suppression of evidence obtained in violation of the Act. *See United States v. Kington,* 801 F.2d 733, 737 & n. 1 (5th Cir.1986), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 495 (1987); *United States v. Frazin,* 780 F.2d 1461, 1466 (9th Cir.), *cert. denied,* 479 U.S. 844, 107 S.Ct. 158, 93 L.Ed.2d 98 (1986). This interpretation is supported by the statute's plain language. *See* 12 USC §§ 3410(e) and (f)[7] and 3417.[8] As the military judge

7. 12 USC § 3410 provides that "a customer [whose bank records are sought by subpena] may file a motion to quash" it. This section also provides:

(e) **Sole judicial remedy available to customer**

The challenge procedures of this chapter constitute the sole judicial remedy available to a customer to oppose disclosure of financial records pursuant to this chapter.

(f) **Effect on challenges by financial institutions**

Nothing in this chapter shall enlarge or restrict any rights of a financial institution to challenge requests for records made by a Government authority under existing law. Nothing in this chapter shall entitle a customer to assert the rights of a financial institution.

8. § 3417. **Civil penalties**

(a) **Liability of agencies or departments of United States or financial institutions**

Any agency or department of the United States or financial institution obtaining or disclosing financial records or information contained therein in violation of this chapter is liable to the customer to whom such records relate in an amount equal to the sum of—

(1) $100 without regard to the volume of records involved;

(2) any actual damages sustained by the customer as a result of the disclosure;

(3) such punitive damages as the court may allow, where the violation is found to have been willful or intentional; and

(4) in the case of any successful action to enforce liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

(b) **Disciplinary action for willful or intentional violation of chapter by agents or employees of department or agency**

Whenever the court determines that any agency or department of the United States has violated any provision of this chapter and the court finds that the circumstances surrounding the violation raise questions of whether an officer or employee of the department or agency acted willfully or intentionally with respect to the violation, the Director of the Office of Personnel Management shall promptly initiate a proceeding to determine whether disciplinary action is warranted against the agent or employee who was primarily responsible for the violation. The Director after investigation and consideration of the evidence submitted, shall submit his findings and recommendations to the administrative authority of the agency concerned and shall send copies of the findings and recommendations to the officer or employee or his representative. The administrative authority shall take the corrective action that the Director recommends.

(c) **Good faith defense**

Any financial institution or agent or employee thereof making a disclosure of financial records pursuant to this chapter in good faith reliance upon a certificate by any Government authority or pursuant to the provisions of section 3413(l) of this title shall not be liable to the customer for such disclosure under this chapter, the constitution of any State, or any law or regulation of any State or any political subdivision of any state.

(d) **Exclusive judicial remedies and sanctions**

The remedies and sanctions described in this chapter shall be the only authorized judicial remedies and sanctions for violations of this chapter.

properly recognized, Congress intended these civil remedies to be the only remedies for a breach of this Federal statute. Accordingly, we agree with the military judge that the desired relief was not authorized by the *Right to Financial Privacy Act.*

## II

Before this Court and the Court of Military Review, appellant expanded upon his argument at trial in an attempt to find some legal authority for his desired remedy of suppression. First, he asserts that his case can be distinguished from *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), and that he was entitled to suppression of this unlawfully seized evidence under the Fourth Amendment exclusionary rule. *See Burrows v. Superior Court of San Bernardino County,* 13 Cal.3d 238, 118 Cal.Rptr. 166, 529 P.2d 590 (1974). Second, he asserts that the government conduct in securing this evidence without benefit of legal process and in circumstances which denied a servicemember even the limited remedies provided by statute and service regulation was "outrageous." He calls for suppression of the challenged evidence by this Court in an exercise of its supervisory authority over military justice.

## FOURTH AMENDMENT

■ In *United States v. Miller, supra,* 425 U.S. at 442–43, 96 S.Ct. at 1623–24, the Supreme Court held that a customer has no reasonable expectation of privacy in bank records and negotiable instruments—including original checks, deposit slips, microfilm copies, and financial statements—held by his bank. Appellate defense counsel contends that *Miller* is distinguishable from the present case. He argues that the Supreme Court in that case "stressed the necessity for the Government to acquire records through 'existing legal process.' *Id.* at 439 [96 S.Ct. at 1622].…" Final Brief at 5. He further contends that, by emphasizing the proper use of compulsory process, the Supreme Court in *Miller* impliedly distinguished its opinion in that case

from *Burrows v. Superior Court, supra,* a state court decision. *See* 425 U.S. at 445 n. 7, 96 S.Ct. at 1625 n. 7.

In *Burrows,* the Supreme Court of California held that disclosure of a person's financial statements by his bank to the police absent a subpoena violated Article I, § 13, of the California Constitution. 118 Cal.Rptr. at 170–713, 529 P.2d at 594–95. Building on his presumption that *Miller* therefore condones *Burrows,* appellate defense counsel concludes that appellant's bank records should have been excluded under the *Burrows* rationale because no legal subpoena was issued in his case. *See United States v. Bennett, supra.*

We reject appellant's Fourth Amendment argument for several reasons. *First,* it ignores defense counsel's express disavowal at trial of a constitutional basis for his suppression motion. *See* Mil.R.Evid. 311(e)(3), Manual, *supra. Cf. United States v. Hilton,* 27 MJ 323, 326 (CMA 1989). *Second,* while the Supreme Court recognized a difference in the defective subpoena situation in *Miller,* 425 U.S. at 445 n. 7, 96 S.Ct. at 1625 n. 7, and the absence of any subpoena in *Burrows,* it further suggested this distinction was not critical on the Fourth Amendment issue. *Id.* at 441 n. 2, 96 S.Ct. at 1623 n. 2. *Third,* assuming appellant might have some reasonable expectation that his bank records will not be turned over to the police unless a subpoena of some type is used by the Government, *Burrows,* the predicate case for this proposition, makes clear that this expectation does not prevail where the bank "is itself a victim of the defendant's suspected wrongdoing." 118 Cal.Rptr. at 170, 529 P.2d at 594; *see Charnes v. DiGiacomo,* 200 Colo. 94, 612 P.2d 1117, 1121 n. 6 (1980). *Fourth,* the Government's representation that a subpoena duces tecum was actually used in this case was not rebutted by the defense. Instead, defense counsel only asserted that he had not seen these subpoenas and that, in any event, they were unauthorized under the decision of this Court in *United States v. Bennett, supra.* This type of situation we

find more analogous to the defective-subpoena situation addressed in *United States v. Miller, supra;* accordingly, its holding of no reasonable expectation of privacy we find applicable to appellant's case.

## MILITARY DUE PROCESS

■ Appellant's military due process (*see United States v. Clay,* 1 USCMA 74, 77, 1 CMR 74, 77 (1951)) or outrageous government conduct (*see United States v. Payner,* 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980)) argument fares no better. He asserts that trial counsel's conduct in using an unauthorized and illegal subpoena to secure his bank records and introduce them at his court-martial in Germany was a deliberate flouting of a Federal statute, a decision of this Court, Manual rules, and Army Regulations. Such conduct he claims was accomplished in a way so as to preclude a servicemember in Germany, unlike a civilian in the United States, from accessing even the limited remedies normally available for such government transgressions. Accordingly, he asks this Court to teach the Government a lesson with respect to its unlawful prosecutorial action against servicemembers at courts-martial in foreign countries.

We note that the above arguments were not made at trial, and the record before us has not been fully developed on the circumstances surrounding trial counsel's use of "subpoenas duces tecum" in appellant's case. Defense counsel did not ask that the subpoenas in question be produced as evidence in this case. Moreover, he did not call trial counsel as a witness in this case to provide testimony on this matter, although the latter made some limited disclosures to the military judge. Finally, defense counsel did not even question the bank representatives on the circumstances surrounding their appearance at this court-martial in a foreign country. A finding of deliberate government misconduct[9] cannot be sustained in these circumstances. *See generally United States v. Bradley,* 30 MJ 308, 311 (CMA 1990).

We also note that the decision of this Court in *United States v. Bennett, supra,* did not expressly address the propriety of subpoenaing documents from third parties in the United States for production at a court-martial in Germany. In this light, trial counsel had some reason for believing that the subpoenas which he issued might be found lawful and meet the rule-of-court exception to the *Right to Financial Privacy Act. See* 12 USC § 3413(e). *But see* RCM 703(e)(2), Discussion.[10] *See also* Drafters*d* Analysis of RCM 703(e)(2), Manual, *supra* at A21–33. Moreover, even if appellant was a servicemember overseas with no immediate access to Federal civilian courts for the purpose of quashing the subpoenas, his military status was not unfairly exploited. No notice of the intended subpoenas was given in this case, without which even a civilian stateside could not exercise his immediate rights under this statute. *See Right to Financial Privacy Act,* 12 USC § 3410. Finally, appellant could still file a suit under the *Right to Financial Privacy Act* in an appropriate district court for the Government's conduct in this case, even though he was present in another country. *See also* para. 2–12, AR 190–6 (1982).[11] In these circumstances, a

9. Congress did not intend that any person subject to the Uniform Code of Military Justice, including trial counsel, be permitted to deliberately flout Codal or Manual provisions for the conduct of trials by court-martial. *See* Arts. 92 and 98, UCMJ 10 USC §§ 892 and 898, respectively. Moreover, the Department of the Army provided for disciplinary sanctions for violations of Army Regulation 190–6 as does the *Right to Financial Privacy Act,* 12 USC § 3417.

10. *United States v. Bennett,* 12 MJ 463 (CMA 1982), does not provide an exclusionary-rule type remedy for the improper use of Article 46 to subpena civilians to courts-martial in foreign countries. Moreover, RCM 703 does not provide such a remedy for the unlawful use of a subpoena for this purpose. *See* RCM 703(f)(4)(C).

11. **2–12.** *Penalties.* Obtaining or disclosing financial records or financial information on a customer from a financial institution in violation of the act or this regulation may subject the Army to payment of civil penalties, actual damages, punitive damages as the court may allow, and costs with reasonable attorney fees. Military and civilian personnel who

court-ordered remedy of a more drastic nature would be inappropriate (*United States v. Frazin,* 780 F.2d at 1466), and the remedy of exclusion of the challenged evidence as supervisory punishment would not be warranted. *See United States v. Payner,* 447 U.S. at 735 n. 7, 100 S.Ct. at 2446 n. 7; *United States v. Kington,* 801 F.2d at 737 n. 1; *see also United States v. Sturman,* 951 F.2d 1466 (6th Cir.1991).

The decision of the United States Army Court of Military Review is affirmed.

Judges CRAWFORD, GIERKE, and WISS, and Senior Judge EVERETT did not participate.

COX, Judge (concurring in part and in the result):

I agree with the result of the lead opinion and much of its reasoning, but there are several points on which I must register my disagreement.

First, trial counsel did *not* violate Federal law in issuing and serving subpoenas *duces tecum* in this case! Article 46, Uniform Code of Military Justice, 10 USC § 846, provides:

Process issued in court-martial cases to compel witnesses to appear and testify and to compel the production of other evidence shall be similar to that which courts of the United States having criminal jurisdiction may lawfully issue and shall run to any part of the United States, or the Territories, Commonwealths, and possessions.

Federal courts clearly have the authority to compel the appearance of witnesses and other evidence. Fed.R.Crim.P. 17(a) and (c); *cf.* RCM 703(e)(2)(B), Manual for Courts–Martial, United States, 1984.

willfully or intentionally violate the act or this regulation may be subject to disciplinary ac-

As to mechanics, Congress plainly delegated to the President the authority to prescribe Rules for Courts–Martial, Art. 36(a), UCMJ, 10 USC § 836(a), and the President designated trial counsel as the issuing authority in general courts-martial. RCM 703(e)(2)(C). *Nothing* in the *Right to Financial Privacy Act,* 12 USC §§ 3401–22, affects court-martial process. 12 USC § 3413 (e); *see also Doe v. Board on Professional Responsibility of District of Columbia Court of Appeals,* 717 F.2d 1424, 1427 (DC Cir.1983). Moreover, *nothing* in the Fourth Amendment provides appellant a haven in the records of the very financial institutions he defrauded. *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976).

Thus trial counsel's issuance of the subpoenas was *perfectly legal.* Needless to say, issuance of a legal subpoena does not violate "military due process."

Whether the subpoenas could be enforced in the manner intended by trial counsel may be another question, but it does not affect their legality. In *United States v. Bennett,* 12 MJ 463 (CMA1982), we recognized that a civilian witness cannot be *compelled* to travel outside the United States to appear at a court-martial. Noting in *Bennett* merely gives the *witness* the option of declining a *foreign* appearance. Clearly, the witness can be required to appear at a forum within the United States for an evidentiary hearing, deposition, or other proceeding as needed. *Cf. United Staes v. Crockett,* 21 MJ 423 (CMA), *cert. denied,* 479 U.S. 835, 107 S.Ct. 130, 93 L.Ed.2d 74 (1986). In any event, the right recognized in *Bennett* is the witness', not the accused's.

Thus there was no bar to admission of the evidence in this case.