878 F.2d 383
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rosie Thomas, Defendant-Appellant.
 No. 88-6341.
 United States Court of Appeals, Sixth Circuit.
 July 5, 1989.
 
 Before KENNEDY, RALPH B. GUY, Jr., and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant, Rosie Thomas, was convicted by a jury of two counts of possession of controlled substances with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1). Thomas appeals her conviction, arguing that the government relied upon inadmissible evidence in presenting its case against her. Because we find the contested evidence to have been properly admitted, we affirm the convictions.
 
 I.
 
 2
 In July 1987, a federal grand jury in Memphis returned an indictment charging Rosie Thomas and Edd Jeffries with one count of possession with intent to distribute a Schedule II controlled substance (cocaine) and one count of possession with intent to distribute a Schedule I controlled substance (marijuana). Each possession with intent to distribute charge also included an allegation that Thomas and Jeffries aided and abetted one another in committing the narcotics offenses.[1]
 
 
 3
 The primary evidence against Thomas and Jeffries at their joint trial was acquired during searches that occurred on July 10 and July 16, 1987. In July 1987, on the basis of information provided by a confidential informant, police had reason to believe that Thomas and Jeffries were storing and selling cocaine at two different addresses. The police obtained warrants to search residences at 1431 LaPaloma, Apartment 2, and 5232 Chatfield Street in Shelby County, Tennessee.
 
 
 4
 The police searched the two residences at approximately the same time on July 10, 1987. Both defendants were present at the LaPaloma apartment. When police entered the apartment to conduct the search, they located Thomas in the bathroom attempting to flush marijuana down the toilet. The search of the LaPaloma residence resulted in discovery of more than ,000 in cash, hidden in three separate locations. The officers also found substances later determined to be marijuana and cocaine. No one was present at the Chatfield residence when the police conducted their search. Police found 733 grams of marijuana, 60.6 grams of cocaine, various items of drug paraphernalia (a triple beam scale, a sifter, glassine bags), $1,930 cash, and keys for two different safe deposit boxes. All of this evidence was introduced against defendants at trial.
 
 
 5
 Soon after these searches, the police determined that the keys seized in the search of the Chatfield residence opened safe deposit boxes at the First American National Bank and at the First Tennessee Bank, both in Memphis. The police contacted these banks and were allowed to examine the bank's records. This examination indicated that both boxes were listed in Thomas' name. On July 16, 1987, the police requested a warrant to search the safe deposit boxes, basing their request on the facts that the keys were kept with other tools of a drug trafficking operation, the boxes were listed in the name of a party recently arrested in connection with the drug distribution scheme, and the police had been told by an informant that the drug traffickers kept drugs and cash in a locked box. The warrant issued and a search of the safe deposit boxes resulted in seizure of $49,350 cash from the box at First American National Bank, and $23,771 cash from the box at First Tennessee Bank. This evidence was introduced against the defendants, after an unsuccessful defense motion to have the evidence suppressed.
 
 
 6
 Along with the testimony of an informant, the prosecution also introduced--over defense objection--evidence relating to a February 1988 search of the Chatfield residence. As a result of a wiretap, unsuccessfully challenged in a separate action, police became aware that during the period between their arrest and trial Thomas and Jeffries were again trafficking in drugs. The police obtained a warrant, searched the Chatfield residence in February 1988, and discovered more narcotics.
 
 
 7
 Thomas did not take the stand to testify. Based on the evidence obtained during the four searches, the testimony of officers conducting the searches, and the testimony of the informant, the jury found Thomas guilty on both counts. The trial judge sentenced Thomas to thirty months imprisonment on each count, to be served concurrently, followed by three years "special parole." Thomas appeals.
 
 II.
 
 8
 As her first point on appeal, Thomas asserts that the trial court erred in denying her motion to suppress the evidence (money) acquired during the search of the safe deposit boxes. Thomas makes two separate arguments to support her claim. First, she argues that the prosecutor violated her fourth amendment rights by examining bank records relating to Thomas without acquiring a warrant or issuing a subpoena. After police officers discovered two safe deposit box keys during their July 10, 1987, search of the Chatfield residence, they went to the appropriate banks, examined their records, and determined that the boxes were listed in Thomas' name. Thomas claims that her fourth amendment rights were violated by this warrantless examination of bank records. Thomas' second argument relates to the actual search of the boxes. After learning that the boxes were listed in Thomas' name, the police obtained a search warrant and seized the contents of the boxes. Thomas alleges that the warrant authorizing this search was obtained without probable cause because the affidavit supporting the warrant contained three flaws: the affidavit did not state when the requesting officer had been told, by an informant, that Thomas and Jeffries stored money in a "locked box;" the officer did not say when the informant had been told, by Jeffries, that such a storage method was used; and the affidavit allegedly did not establish a nexus between the charged crime and the information sought to be discovered in the safe deposit boxes. We do not find these arguments persuasive.
 
 
 9
 We recognize that Thomas is correct in claiming that citizens have legitimate expectations of privacy in the contents of their safe deposit boxes. Katz v. United States, 389 U.S. 347 (1967). However, Thomas' first point involves examination of bank records revealing Thomas to be the owner of the deposit boxes, not the search of the boxes themselves. On this question, our analysis is controlled by United States v. Miller, 425 U.S. 435 (1976). In Miller, the Supreme Court held that a bank customer has no legitimate expectation of privacy concerning information kept in bank records, so governmental access to such records does not violate the fourth amendment. The rule in Miller subsequently was modified by passage of the Right to Financial Privacy Act of 1978. Pub.L.No. 95-630, Title XI, 92 Stat. 3697 (codified as amended at 12 U.S.C. Secs. 3401-3422). Although this legislation creates a statutory right of privacy in bank records, it does not support Thomas' claim that the evidence the government obtained from the banks should have been suppressed. When a governmental investigator violates the Right to Financial Privacy Act, the aggrieved party's exclusive remedy is a suit for money damages. 12 U.S.C. Sec. 3417(d). We agree with all other courts addressing the issue and hold that courts are not required to suppress evidence obtained as a result of the government's unauthorized access to a defendant's bank records. United States v. Kingston, 801 F.2d 733, 737 (5th Cir.1986), cert. denied, 481 U.S. 1014 (1987); United States v. Frazier, 780 F.2d 1461, 1464-66 (9th Cir.), cert denied, 481 U.S. 844 (1986); United States v. Mangieri, 694 F.2d 1270, 1286 n. 18 (D.C.Cir.1982); United States v. Whitly, 688 F.Supp. 48, 57-61 (D.C.Me.1988).
 
 
 10
 Thomas is also incorrect in maintaining that deficiencies in the affidavit used as a basis for requesting a warrant for the search of the safe deposit boxes resulted in there being no probable cause to issue the warrant. As the district court correctly noted in the suppression hearing, analysis of whether a warrant is supported by probable cause hinges upon consideration of the totality of the circumstances. Illinois v. Gates, 462 U.S. 213 (1983). Here the totality of the circumstances clearly indicated that there was probable cause to believe materials related to the ongoing drug operation were located in the safe deposit boxes. The affidavit noted that only six days before the request for a warrant, the police had seized narcotics, drug paraphernalia, and more than $54,000 in cash during searches of the LaPaloma and Chatfield residences. These searches also produced the keys to the deposit boxes. It was thus clear that the police had uncovered a sizeable distribution operation, making it likely that more money and/or drugs were hidden elsewhere. While there was this circumstantial evidence linking the keys to the criminal enterprise, the affidavit also noted that an informant claimed that Jeffries mentioned storing his drug-related profits in a locked box.[2] The failure of the affidavit to include specific dates when the affiant learned of the informant's knowledge about Jeffries' method of storing money, or when the informant garnered such information from Jeffries, is not fatal. Here there was no real risk of "staleness" because the affidavit made clear that the boxes were being investigated in connection with the uncovering of a drug distribution operation that occurred merely six days before the request for a warrant. The affidavit provided ample reason to believe that the safe deposit boxes contained drugs and/or money connected with the July 10, 1987 arrests, so the warrant was valid and the resulting evidence admissible.
 
 III.
 
 11
 Thomas' second point on appeal relates to evidence of subsequent criminal activity admitted, over defense objection, during the course of the trial. Prosecution witness Hoback, a special agent with the United States Treasury Department Bureau of Alcohol, Tobacco and Firearms, testified on direct examination that in February 1988 he served a search warrant at the Chatfield address. During this search he discovered narcotics. Thomas argues now, as she argued at the district court, that this evidence of subsequent criminal activity was inadmissible under Fed.R.Evid. 404(b), as the evidence allegedly related only to Thomas' character and propensity to commit drug-related crimes. Thomas maintains that the evidence cannot help to establish a common plan, scheme or design, as the government asserted and the trial court found. Additionally, Thomas argues that even if the evidence is relevant to proving a scheme or plan, the probative value of the evidence was outweighed by the prejudicial effect, so the evidence should have been excluded.
 
 
 12
 Settled law holds that other acts evidence may be admitted only if "probative of a material issue other than character." Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 1499 (1988). A trial judge is accorded "broad discretion" in making a rule 404(b) determination, United States v. Vance, No. 87-6276, slip op. (6th Cir. Apr. 4, 1989), and we think the district court was well within the scope of its discretion in finding this proffered evidence relevant to proof of a common scheme or plan. Defendant suggests that our decision on this issue is controlled by number of cases decided by the Second and Ninth Circuit courts, but we think the more relevant precedent comes from cases decided by this court. Most significant of the Sixth Circuit cases is United States v. Ismail, 756 F.2d 1253 (6th Cir.1985);[3] see also Vance, No. 87-6276 (holding that rule 404(b) is actually a rule of inclusion rather than exclusion); United States v. Passarella, 788 F.2d 377 (6th Cir.1986). In Ismail, the defendant argued that his travels to Pakistan and his dealings with another party (Johnson) were strictly business related. We affirmed a trial court decision admitting evidence establishing that past trips to Pakistan and dealings with Johnson were drug related. We held that where the other act evidence is "substantially similar to, and near in time to, the offense charged in the indictment," the evidence may be admitted. Ismail, 756 F.2d at 1259. In Ismail, the other acts evidence shed light on the true nature of Ismail's business with Johnson, establishing that the two of them were engaged in an ongoing scheme to supply drugs.
 
 
 13
 For many of the same reasons, the other acts evidence against Thomas was admissible. Rather than being used to prove propensity, the evidence was used to establish the true nature of the relationship between Thomas and Jeffries, and to refute Thomas' allegation that she was simply an innocent bystander, uninvolved in the actual trafficking of drugs. While we noted in Ismail that no predetermined formula could be established for determining when a separate offense is sufficiently similar and close in time to justify treating it as part of a scheme or plan, we have no difficulty determining that the elements of similarity and nearness in time were established here. The subsequent possession involved the same type of narcotics, apparently being distributed along the same channels by the same people, at a time less than eight months after Thomas and Jeffries were first arrested. Finally, as in Ismail, the trial court clearly instructed the jury as to the appropriate uses of the other acts evidence, stressing the impropriety of treating the evidence as proof of Thomas' character. The trial court properly found the evidence of subsequent possession by Thomas and Jeffries to be relevant as proof of a common scheme or plan.
 
 
 14
 We also reject Thomas' argument that the probative value of this evidence was outweighed by its prejudicial effect. We first note that the district court carefully limited any potentially prejudicial effect by including timely instructions directing the jury to consider the evidence only for permissible purposes. Additionally, we recognize that "[t]he district court has broad discretion in balancing probative value against potential prejudicial impact." Ismail, 756 F.2d at 1259; United States v. Dabish, 708 F.2d 240 (6th Cir.1983). In this instance, where it is clear that the district court carefully considered the evidence, its admissibility, relevance, and potential prejudice, we cannot say that the trial judge abused his discretion in finding the probative value to outweigh the possible prejudicial effect.
 
 
 15
 Finally, we go on to note, as we did in Ismail, that any error in admitting the evidence of the February 1988 search would have been harmless. In determining whether prejudice has resulted from admission of evidence in contravention of rule 404(b), we examine the "record ... as a whole from the perspective of how the error might have affected the jury." Ismail, 756 F.2d at 1260. If the record clearly indicates that "the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand." Kotteakos v. United States, 328 U.S. 750 (1946); Ismail, 756 F.2d at 1260; United States v. Reed, 647 F.2d 678, 687 (6th Cir.), cert. denied, 454 U.S. 837 (1981) (recognizing the Kotteakos standard as controlling). In the present case, the evidence against Thomas obtained from the July 1988 searches was overwhelming. Police found narcotics, drug paraphernalia, and cash at Thomas' residence; the police executing the search warrant at the LaPaloma residence found Thomas frantically attempting to destroy incriminating evidence by flushing marijuana down the toilet; the keys to Thomas' safe deposit boxes were kept with the drugs and drug proceeds, and the boxes contained over $70,000 in cash; the prosecution informant testified at trial that Thomas and Jeffries together ran the drug distribution operation. In fact, Thomas herself admits in her brief on appeal that "[t]he prosecutor had a substantial and sufficient case without this [February 1988] evidence." We are convinced that even were we to accept Thomas' rule 404(b) argument, we would nevertheless affirm the district court because the admission of evidence relating to the February 1988 search did not affect the outcome in Thomas' case.
 
 
 16
 The decision of the district court is AFFIRMED.
 
 
 
 [1]
 According to 18 U.S.C. Sec. 2(a), a party who aids or abets the commission of an offense against the United States is punishable as a principal
 
 
 [2]
 We recognize the defendant's contention that the informant's reference to a "locked box" actually refers to a small, metal box stored in the apartment not to a safe deposit box. Nevertheless, the police could, in good faith, have interpreted this uncertain reference as relating to the safe deposit boxes. There also was adequate information in the affidavit without any reference to a locked box
 
 
 [3]
 Like many cases under 404(b), Ismail deals with introduction of evidence of past bad acts rather than of bad actions taken after the alleged occurrence of a charged offense. This distinction is of no significance. Fed.R.Evid. 404(b) refers to admissibility of evidence of "other" wrongs, not merely past transgressions. In her brief, Thomas herself tacitly admits that there is no difference between the admissibility of past, as opposed to subsequent, acts, as she supports her argument with cites to cases involving attempted introduction of both past and subsequent acts