Fernando BOTERO–ZEA, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 95 Civ. 8448 (RPP).

United States District Court,
S.D. New York.

Feb. 1, 1996.

Frankel & Abrams, New York City by Stuart Abrams, for Plaintiff.

Mary Jo White, United States Attorney for the Southern District of New York, New York City by Jennifer K. Brown, for Defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiff Fernando Botero–Zea, a citizen and resident of the Republic of Colombia has moved, pursuant to 12 U.S.C. § 3418, for a preliminary injunction enjoining the United States Government ("the Government"), as well as all of its agents and employees, [1] from violating his rights under the Right to Financial Privacy Act ("RFPA" or "the Act"), 12 U.S.C. § 3401 *et seq.*; [2] from obtaining financial records relating to bank accounts maintained in the Southern District of New York and for which he is either the person who utilized the resources of the bank or the authorized representative of such a person ("the accounts"); [3] from disclosing financial records or information derived from such records relating to the accounts; and [4] directing that notification be given to Plaintiff and his counsel of the issuance of any administrative subpoena seeking financial records relating to the accounts. Jurisdiction is predicated upon 12 U.S.C. § 3416.[1]

### *Background*

In August 1995, Plaintiff was forced to resign from his position as Colombia's Minister of Defense amidst allegations that he had been involved in the receipt of illegal campaign contributions from the Cali drug cartel. Allegations of Plaintiff's illegal activities received media attention. (Abrams Reply Aff. Ex. 4.) Specifically, the August 14, 1995, issue of *Time Magazine* stated that the Drug Enforcement Agency ("DEA") had confirmed that bank accounts at Chase Manhattan Bank in New York appeared to be linked to illegal campaign contributions. (Abrams Reply Aff. Ex. 4.)

Counsel for Plaintiff also learned in September 1995 that at least one New York bank had been served by the DEA with an administrative subpoena concerning an account on which Botero–Zea was a customer within the meaning of the Act. (Abrams Reply Aff. ¶ 3.) An official from Barclay's Bank in New York represented to Plaintiff's counsel that, at the time it received an administrative subpoena requesting records on an account on which Plaintiff is a customer, it had not received an order barring disclosure of the subpoena to the customer or dispens-

---

1. The provision grants that:
   An action to enforce any provision of this chapter may be brought in any appropriate United States district court without regard to the amount in controversy within three years from the date on which the violation occurs or the date of discovery of such violation, whichever is later.
   12 U.S.C. § 3416.

ing with customer notification as required by the Act. (Abrams Reply Aff. ¶ 3.) Based upon this knowledge, Plaintiff contends that Defendant is seeking to obtain records of bank accounts protected under the RFPA by administrative subpoena without providing the notification required by law.

Neither in the Complaint nor in the moving papers does Plaintiff disclose the identity of the accounts he claims have been subpoenaed. Instead, he asks that the Government be ordered to identify the accounts. At oral argument, counsel for Plaintiff contended that if Plaintiff provided the numbers of the accounts, no useful purpose would be served and the Government would be provided access to information regarding accounts of which it previously had not been aware.

The Government has informed Plaintiff that it is relying upon § 3409 of the Act, which reads, in relevant part:

**§ 3409 Delayed Notice**

**(a) Application by Government authority; findings**

Upon application of the Government authority, the customer notice required under [the provisions of the Act] may be delayed by order of an appropriate court if the presiding judge or magistrate finds that—

(1) the investigation being conducted is within the lawful jurisdiction of the Government authority seeking the financial records;

(2) there is reason to believe that the records being sought are relevant to a legitimate law enforcement inquiry; and

(3) there is reason to believe that such notice will result in—

[A] endangering life or physical safety of any person;

[B] flight from prosecution;

[C] destruction of or tampering with evidence;

[D] intimidation of potential witnesses; or

[E] otherwise seriously jeopardizing an investigation or official proceeding or unduly delaying a trial or ongoing official proceeding to the same extent

as the circumstances in the preceeding subparagraphs.

An application for delay must be made with reasonable specificity.

12 U.S.C. § 3409(a). Plaintiff argues that the information he received from Barclay's Bank indicates that the Government did not follow the procedures set forth in the Act for obtaining an order delaying disclosure of the issuance of an administrative subpoena and that the Government is statutorily bound to provide Plaintiff notice of the records subpoenaed and an opportunity to move to quash the subpoenas. Defendant does not deny the substance of the information received by Plaintiff's counsel from Barclay's Bank.

Plaintiff seeks injunctive relief prohibiting the Government from violating his rights under the Act or from obtaining his financial records in violation of the Act and directing the Government to provide notice of any records it seeks which fall within the category of records protected by the Act. Additionally, Plaintiff seeks a preliminary injunction prohibiting the Government from transferring any records obtained pursuant to the administrative subpoenas at issue to law enforcement officials of the Government of the Republic of Colombia.

***Discussion***

The Supreme Court's ruling in *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), which held that individual depositors do not have a constitutionally protected privacy interest in their own bank records, provided the impetus for the passage of the RFPA. The Act represents a compromise between the right of financial privacy of bank customers and law enforcement interests in obtaining records necessary to investigate criminal activity. *See McDonough v. Widnall*, 891 F.Supp. 1439 (D.Colo. 1995). The Act prevents government access to records of customer accounts at financial institutions, except where a customer of a financial institution has authorized that access, or where disclosure is in response to an administrative subpoena or summons, search warrant, judicial subpoena, or formal written request which meets the specific require-

ments set forth in the statute. The RFPA defines a "customer" of a financial institution as "any person or authorized representative of that person who utilized or is utilizing any service of a financial institution, or for whom a financial institution is acting or has acted as a fiduciary, in relation to an account maintained in the person's name." 12 U.S.C. § 3401(5).

■ Preliminary injunctive relief is an extraordinary remedy, exercised upon the following showing by the party seeking relief: (1) irreparable harm will result if relief is not granted; and (2) "either likelihood of success on the merits ... or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *United States v. Siemens Corp.*, 621 F.2d 499, 505 (2d Cir.1980) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979)). Where, as here, a plaintiff seeks to "stay government action taken in the public interest pursuant to a statutory or regulatory scheme," *Able v. United States*, 44 F.3d 128, 131 (2d Cir.1995) (quoting *Plaza Health Laboratories, Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir.1989)), he or she may not rely on a "fair ground for litigation" and the "balance of hardship" test but must demonstrate likelihood of success on the merits to obtain preliminary injunctive relief. *New York Urban League, Inc. v. State of New York*, 71 F.3d 1031, 1036 (2d Cir.1995).

I. *Use of Administrative Subpoena to Obtain Financial Information*

■ Plaintiff claims that Defendant issued administrative subpoenas to financial institutions for accounts on which he is a customer within the meaning of the Act and failed to follow procedures required by the Act. The Government may seek to obtain records from financial institutions through use of administrative subpoenas only if (1) it has reason to believe the records are relevant to a legitimate law enforcement inquiry; and (2) it serves notice on the customer on or before the date of service of the subpoena. Section 3405 of the Act, entitled "Administrative subpena and summons" reads as follows:

A Government authority may obtain financial records under section 3402(2) of this title pursuant to an administrative subpena or summons otherwise authorized by law only if—

(1) there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry;

(2) a copy of the subpena or summons has been served upon the customer or mailed to his last known address on or before the date on which the subpena or summons was served on the financial institution together with the following notice which shall state with reasonable specificity the nature of the law enforcement inquiry:

"Records or information concerning your transactions held by the financial institution named in the attached subpena or summons are being sought by this (agency or department) in accordance with the Right to Financial Privacy Act of 1978 [12 U.S.C.A. § 3401 et seq.] for the following purpose: If you desire that such records or information not be made available, you must:

"1. Fill out the accompanying motion paper and sworn statement or write one of your own, stating that you are the customer whose records are being requested by the Government and either giving the reasons you believe that the records are not relevant to the legitimate law enforcement inquiry stated in this notice or any other legal basis for objecting to the release of the records.

"2. File the motion and statement by mailing or delivering them to the clerk of any one of the following United States district courts:

"3. Serve the Government authority requesting the records by mailing or delivering a copy of your motion and statement to

"4. Be prepared and come to court and present your position in further detail.

"5. You do not need to have a lawyer, although you may wish to employ

one to represent you and protect your rights.

If you do not follow the above procedures, upon the expiration of ten days from the date of service or fourteen days from the date of mailing of this notice, the records or information requested therein will be made available. These records may by transferred to other Government authorities for legitimate law enforcement inquiries, in which event you will be notified after the transfer."; and

(3) ten days have expired from the date of service of the notice or fourteen days have expired from the date of mailing the notice to the customer and within such time period the customer has filed a sworn statement and motion to quash in an appropriate court, or the customer challenge provisions of section 3410 of this title have been complied with.

12 U.S.C. § 3405.

■ Although the Act establishes a procedure under § 3409 by which the Government can obtain an order permitting a delay in notice to a bank customer of its request for financial records until after it has received records, such an order must be obtained prior to the service of the administrative subpoena to avoid the notice to the customer required by Section 3405.

At oral argument, the government assumed, for purposes of argument, that an administrative subpoena or subpoenae had been served and maintained that Plaintiff has no standing to litigate the propriety of any delay order issued by a presiding judge or magistrate judge after making one of the findings required under § 3409. The representations of a Barclay's Bank official to Plaintiff's counsel reveals that no court order delaying notice to the customer was in place at the time administrative subpoena or subpoenae were issued. The Government does not deny this assertion of Plaintiff's counsel but argues that Plaintiff must show that no court order issued subsequent to the service

of the administrative subpoena.[2] The question thus presented is whether a customer of a financial institution is entitled to notice under the RFPA as Plaintiff asserts if the Government has issued an administrative subpoena to a financial institution pursuant to § 3405 without obtaining a prior order delaying customer notice as permitted by § 3409 of the Act.

## II. *Right to Injunctive Relief*

■ At the time of the service of the administrative subpoena, Plaintiff was entitled under the Act to notice of administrative subpoenas as provided for under § 3405, failure to provide him with notice and an opportunity to dispute the production of records pursuant to such subpoenae constituted a violation of the Act and thus irreparable harm. Accordingly, the focus of the Court's inquiry as to the propriety of injunctive relief must be whether or not Plaintiff has demonstrated a likelihood of success on the merits of his claim.

The House Committee Report on the Right to Financial Privacy Act ("the Report") explained the dual purpose of the Act as follows:

Title XI is intended to protect the customers of financial institutions from unwarranted intrusion into their records while at the same time permitting legitimate law enforcement activity. Therefore, the title seeks to strike a balance between customers' right of privacy and the need of law enforcement agencies to obtain financial records pursuant to legitimate investigations.

H.R.Rep. No. 1383, 95th Cong. 2nd Sess. 33, *reprinted in* 1978 U.S.C.C.A.N. 9273, 9305.

Nothing in the Act suggests that orders signed under § 3409 after issuance of an administrative subpoena can eliminate the requirement of service of a copy of the subpoena upon the customer "on or before the date on which the subpena . . . was served on

2. In support of its position, Defendant has made

*in camera* submissions to the Court, to which

the financial institution." 12 U.S.C. § 3405.[3]

The public policy concerns that underlie the Act suggest the importance of its notice provisions. The Report indicates Congress' serious concern for the privacy interests of individuals in their bank records. H.R.Rep. No. 1383, 95th Cong. 2nd Sess. 34, *reprinted in* 1978 U.S.C.C.A.N. 9273, 9306. The Report expressed two "key principles" upon which the Act was based:

> [O]ne that the customer be given prior notice of the Government's attempt to gain access to his bank records; and two, that the customer be given an opportunity to contest Government access in court.

*Id.* The legislative history of the Act thus places significant weight on the privacy interests of individuals in their own banking records. In contrast, the Report mentions the need to strike a balance between privacy interests and law enforcement needs, but it does not suggest any law enforcement interests that justify departure from compliance with the notice to customers requirements specifically set forth in the Act itself at 12 U.S.C. § 3405.

As the Report states, the Act was designed to strike a balance between privacy interests of individuals on the one hand and the interests of law enforcement on the other. Here, the Defendant claims that there is an "important law enforcement interest" in maintaining the secrecy of any investigation of bank accounts such as Plaintiff's which would counterbalance Plaintiff's privacy interests. The short answer to this argument is that the Act is designed to protect those interests and that if the law enforcement interest is so important an interest the Government should have been correspondingly careful to see that those interests were preserved by strict compliance with the Act. Botero–Zea points out that the DEA has confirmed to *Time Magazine* that it was investigating money laundering of illegal campaign contributions through New York banks diminishes the weight which can be accorded to the Government's

argument that important law enforcement interests in secrecy should permit less than strict compliance with the Act. Plaintiff's contentions have merit.

By requiring Government officials to obtain delay orders prior to presenting financial institutions with administrative subpoenas, the Act assures that private records will only be produced by financial institutions without customer notice when the government has demonstrated to a court that it has a compelling interest in preventing disclosure. Given the publicity which has surrounded the DEA's investigation of bank accounts and for alleged campaign contributions, the Government's evident failure to exercise care to follow the statutory procedures allowing delayed notice to Plaintiff in order to pursue legitimate law enforcement interests, the Government's interest in maintaining the secrecy of administrative subpoenas relating to Plaintiff's accounts has a hollow ring.

Were this Court to reach the result for which the Government contends, the result would mean that Government agents might feel free to obtain financial records of individuals by means of "informal cooperation" and without obtaining court orders required by the RFPA. Under the Constitution, a primary function of the Judicial Branch is to insure that the laws Congress enacts are followed by the Executive Branch. The Second Circuit's decision in *Young v. United States Department of Justice*, 882 F.2d 633 (2d Cir.1989) highlights the importance of the Act as setting procedural limitations upon the Government in its attempts to obtain financial information. The *Young* court explained that

> Congress determined that the best way to protect financial records from unwarranted governmental intrusion without crippling legitimate criminal investigations was to regulate the government's access ... [W]e believe that Congress intended the RFPA to regulate the release of customer information from financial institutions in cir-

Plaintiff objects.

**3.** § 3403(b) of the Act requires that financial institutions receive written certification of the Government's compliance with the Act *prior to* the release of any records. Thus, since no certi-

fication of compliance with the Act can be made if there has not been compliance with the customer notice requirement of § 3405, a subsequent delaying order would not permit release of such records to the Government.

cumstances where adequate controls did not already exist.

*Young,* 882 F.2d at 636.

For the above mentioned reasons, it is concluded that Defendant violated the Right to Financial Privacy Act when it failed to provide notice of the issuance of administrative subpoenas requesting information about accounts at financial institutions for which Plaintiff is a customer within the meaning of the Act. Plaintiff has shown irreparable harm to his right to privacy under the Act and non-compliance by Defendant with the notice requirements of the Act in its investigation of his accounts. Consideration of the proper form of relief is therefore appropriate.

## III.  *Relief to be Imposed*

█  Plaintiff first seeks an order requiring the Government to provide notice of any administrative subpoenas that have been issued or may hereafter issue as required by the Act. Under the Act, Plaintiff is entitled to injunctive relief "to require that the procedures of this chapter are complied with." 12 U.S.C. § 3418. Accordingly, the Government is hereby ordered to comply with the procedures of 12 U.S.C. § 3401 *et seq.* for obtaining information about Plaintiff's accounts. Unless prior to serving an administrative subpoena it obtained an order delaying notice of such a subpoena, Defendant is hereby required to provide Plaintiff with notice of any administrative subpoena for financial records on accounts for which Plaintiff is a customer within the meaning of the Act that it has to date issued. Defendant is also ordered to give Plaintiff such notice in the future if a prior delaying order has not been issued.

Plaintiff also requests that the Government be enjoined from disclosing financial records relating to the accounts or information derived from financial records relating to the accounts. The request raises the issue of whether the Exclusionary Rule of the Fourth Amendment—or its logical equivalent—should be applied to situations in which the Government obtains information in violation of the Right to Financial Privacy Act.[4]  Ev-

ery court which has addressed this question has answered in the negative. *See, e.g., United States v. Kington,* 801 F.2d 733 (5th Cir.1986); *United States v. Frazin,* 780 F.2d 1461 (9th Cir.1986); *United States v. Whitty,* 688 F.Supp. 48 (D.Me.1988); *United States v. Wooten,* 34 M.J. 141 (C.M.A.1992). The Fifth Circuit explained that:

> While it is evident that Congress has expanded individuals' right to privacy in bank records of their accounts, appellees are mistaken in their contention that the expansion is of constitutional dimensions. The rights created by Congress are statutory, not constitutional.
>
> Thus, we must look at the Right to Financial Privacy Act itself to assess appellees' contentions. When we do so, however, we find that suppression of the evidence is nowhere mentioned as a remedy for violation of the Act. Congress was surely cognizant that in *Miller* the Court denied suppression as a remedy for a purported Fourth Amendment violation. Its failure to change the effect of *Miller* is strong evidence that Congress did not intend such a remedy ... Since there was no constitutional violation here, and Congress apparently did not intend suppression as a remedy for violation of 18 U.S.C. ¶ 3420 [sic], we conclude that suppression is inappropriate.

*United States v. Kington,* 801 F.2d at 737. Similarly, the *Frazin* Court explained that, with respect to the Right to Financial Privacy Act:

> [h]ad Congress intended to authorize a suppression remedy, it surely would have included it among the remedies it expressly authorized.... Because the statute, when properly construed, excludes a suppression remedy, it would not be appropriate for us to provide one in the exercise of our supervisory powers over the administration of justice.

*United States v. Frazin,* 780 F.2d 1461, 1466 (9th Cir.1986). The absence of an underlying constitutional right of privacy with respect to financial documents precludes application of the judicial remedy of suppression in this circumstance. Accordingly, despite Defen-

---

4.  Indeed, the remedy Plaintiff seeks—prohibition of any disclosure of information obtained by the Government in violation of the Act—goes beyond

the remedy offered by the Exclusionary Rule, which is limited in application to introduction of unlawfully seized evidence at trial.

dant's violation of the Act, this Court cannot enjoin the Government from disclosing or using in litigation information obtained from the financial institutions in violation of the Act.

### IV. Transfer of Records to Colombian Law Enforcement Officials

█ Plaintiff further contends that the Government is seeking to provide information obtained from United States financial institutions regarding accounts for which he is a customer within the meaning of the Act to the Government of the Republic of Colombia and that transfer of the records in such a manner would violate the Act. In support of his argument that the Government should be prohibited from transferring financial records, Plaintiff cites 12 U.S.C. § 3412, which reads:

> Financial records originally obtained pursuant to this chapter shall not be transferred to another agency or department unless the transferring agency or department certifies in writing that there is reason to believe that the records are relevant to a legitimate law enforcement inquiry within the jurisdiction of the receiving agency or department.

12 U.S.C. § 3412(a). Plaintiff acknowledges that § 3412 sets forth procedures governing the transfer of financial documents *among* agencies within the United States Government and that it does not by its own terms purport to govern transfers of information from the United States government to law enforcement officials of foreign nations. Despite the lack of specific language in the statute to render the certification provision of § 3412 applicable to transfers of information to foreign governments, application of the provision would be consistent with the spirit of the Act. Accordingly, the Court would suggest that, in the event such information is to be provided to foreign governments for law enforcement purposes, the Government follow the certification procedure and thus protect Plaintiff's legitimate privacy interests under the Act. Nothing about the certification provisions in § 3412, however, suggests—as Plaintiff contends—that the Act prohibits transfer of financial information protected under the Act from the United States Government to foreign governments. Plaintiff contends that the absence of any provision in the Act allowing disclosure of financial information obtained thereunder to officials of foreign governments should be interpreted as a bar to such transfers. Plaintiff's argument misconstrues the nature of the protections afforded by the Right to Financial Privacy Act. Plaintiff's suggestion that the absence of any language contemplating transfers to foreign nations in § 3412 functions to prohibit such transfers conceives of the procedures set forth by the Act regarding intra-governmental procedures as representing an abrogation of an underlying right, rather than a creation of limited rights to notice in circumstances where the Government transfers information. The Supreme Court's decision in *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), belies Plaintiff's contention. As prior courts considering the scope of protection offered by the Act have acknowledged, the "rights created by Congress are statutory, not constitutional." *United States v. Kington*, 801 F.2d at 737. Given the lack of any underlying constitutional right to privacy in financial records, the provisions of the Act cannot be read against a background of presumed privacy rights. The lack of any provision in the Act governing the transfer of records to foreign government officials cannot, for this reason, be interpreted to prohibit such transfers. The Second Circuit has considered the implications of reading the Act to impede the ability of United States Government officials to assist foreign law enforcement officials in their investigations and has expressed reluctance in making such an interpretation, where the express language of the Act does not clearly dictate it. *See Young v. United States Department of Justice*, 882 F.2d 633 (2d Cir. 1989) (Interpreting the Act not to apply to law enforcement officials who become court-appointed commissioners to assist in foreign investigations, the Court explained that "[t]he real possibility that foreign governments would begin to turn to private commissioners for assistance would undermine the government's ability to obtain reciprocal cooperation. Absent some indication that Congress even considered the issue, we are reluctant to give the Act an interpretation that would frustrate this independent objective." *Young*, 882 F.2d at 638.) In this case, as in *Young*, a decision that the Right to Financial

622

Privacy Act prohibits United States law enforcement officials from providing financial information to foreign law enforcement officials may very well have a negative impact on reciprocal agreements between the United States and foreign nations regarding criminal investigations. Absent a clear indication from Congress that the Act was intended to work such results, this Court cannot construe it to do so. Accordingly, Plaintiff's request to enjoin transfer of financial records obtained from financial institutions in New York to Colombian law enforcement officials in aid of their criminal investigation is denied.

### Conclusion

For the above stated reasons, Plaintiff's motion for preliminary injunctive relief is hereby granted in part and denied in part.

IT IS SO ORDERED.